## THE MISSOURI PACIFIC RAILWAY COMPANY v. SHERWOOD, THOMPSON & CO.

### No. 3154.

1. **Stipulation Against Liability by Carrier.**—That a common carrier, unless forbidden by statute, may exempt itself from liability for loss by fire unless caused by the negligence of itself or its servants, is well settled. Such a limitation is reasonable.

2. **Same — Statute Construed.** — Article 278, Revised Statutes, prescribes that "railroad companies and other common carriers of goods, wares, and merchandise for hire within this State, on land, or in boats or vessels on the waters entirely within the body of this State, shall not limit or restrict their liability as it exists at common law,"

etc. This does not apply to a foreign or interstate shipment, but only to shipments purely domestic, beginning and ending in the State of Texas.

3. **Domestic Shipment.**—By a contract of domestic shipment is understood such a contract as contemplates the shipment of goods from one point in the State to another point therein. Transportation is only domestic when confined to the boundaries of the State in which the contract of shipment is made.

4. **Foreign Shipment.**—By a contract of foreign or interstate shipment is understood such a contract as contemplates the transportation thereunder of goods from a point within the State to a foreign country or to a point within another State.

·5. **Contract for Foreign Shipment.**—An undertaking on the part of the carrier is a contract for foreign shipment when contracting to carry cotton upon its lines and to deliver it to its connecting lines, to be carried to the city of New Orleans, Louisiana, there to be delivered to the West India Pacific Steamship Company, to be transported to Liverpool and there delivered to Martin, Wise & Fitzhugh, or their assigns.

6. **Same—Illustrations.**—The track of a railway company may extend beyond the State; yet if goods be carried by it from one point to another within this State, such carriage constitutes transportation within this State, and such railway is a "carrier within the State." But if the railway, whether by itself or by its connecting lines, its agents, transport goods from a point within this State to a point in another State, it is a carrier not "within this State." In the latter it is engaged in interstate commerce.

7. **Bill of Lading Limiting Liability to Line of Carrier.**—Nor will the bill of lading stipulating for the carriage of the cotton to points without the State be divested of its interstate character and become a contract for domestic shipment by a clause limiting its liability until the cotton shall be delivered upon shipboard at the city of Galveston.

8. **Declarations by Agent.**—Declarations of an agent must be within the scope of his authority and while the transaction is yet depending; e. g., a tabulated statement made out by one known as "claim agent" as to the bales, etc., of cotton burned, is not competent against the principal unless it be shown that it was within the extent or scope of his business, and that it was within the discharge of his duty while the obligation of the carrier yet continued.

9. **Hearsay.**—A witness testified, that the cotton "was destroyed by fire on November 14, 1887, at Greenville; * * * that he knows this cotton was destroyed * * * of his own knowledge, as far as it is possible for him to know it without actually seeing it burn." Objections to it were overruled. *Held,* there are conditions in which one can acquire knowledge without seeing. Its admission can not be held error.

10. **Relevant Testimony.**—Witness was permitted to testify that the cotton destroyed, 473 bales, of which a part was involved in the suit, was worth in excess of $23,649.20. *Held,* the testimony tended to prove the value of the cotton lost, and was admissible.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE. No statement necessary.

*Alexander & Clark,* for appellant.—1. The statute of Texas (Acts 1863, 10th Leg., p. 7) prohibiting carriers from limiting their liability as it exists at common law, is only applicable to shipments within this State.

2. If such statute be intended to apply to foreign shipments, such as shipments from Greenville, Texas, to Liverpool, England, and prohibits the carrier in such shipments from exempting itself from loss by fire not resulting from the carrier's negligence or the negligence of its servants, agents, or employes, then the statute is a regulation of foreign commerce. It affects directly the terms, conditions, and stipulations of the contract of shipment, and is not a regulation of the instrumentalities of commerce only situated wholly within the State, but is a regulation of the commerce itself; and in so far as it affects foreign commerce it is void, being in contravention of our Federal Constitution and laws.

3. If the State of Texas ever had any authority to affect and regulate foreign or interstate commerce by its statutes, its authority and its legislation have been superseded and repealed by the Act of Congress of February 4, 1887, regulating foreign or interstate commerce, entitled "An act to regulate commerce." If the States had to some extent the power to pass laws affecting foreign or interstate commerce prior to and in the absence of any action by Congress, since Congress legislated upon the subject the State laws are thereby superseded and annulled.

4. A contract of foreign or interstate commerce exempting a carrier from loss by fire not resulting from its own negligence or the negligence of its servants, agents, or employes is valid, and will protect the carrier from liability for such loss.

Authorities under first proposition: Rev. Stats., art. 278; Railway v. Mfg. Co., 14 S. W. Rep., 785; Railway v. Ryan, 65 Texas, 13; Railway v. Harris, 67 Texas, 166; Railway v. Park, 1 Ct. App. C. C., sec. 332; Railway v. Harris, 1 Ct. App. C. C., sec. 1260; Railway v. Davis, 2 Ct. App. C. C., sec. 191.; Id., 2 Ct. App. C. C., secs. 136, 137, 324, 330, 496; Railway v. Boothe, 3 Ct. App. C. C., sec. 364.

- Authorities under second and third propositions: Const. U. S., art. 1, sec. 8; Act of Congress of February 4, 1887, and amendments thereto, entitled "An act to regulate commerce;" Railway v. Illinois, 118 U. S., 558; Gibbons v. Ogden, 9 Wheat. (U. S.), 1; Hall v. De Cuir, 95 U. S., 485; Railway v. Husen, 95 U. S., 465; County of Mobile v. Kimble, 102 U. S., 618; Mfg. Co. v. Ferguson, 113 U. S., 727; Fargo v. Stevens, 121 U. S., 230; Sherlock v. Alling, 93 U. S., 99; Pickard v. Pullman Co., 117 U. S., 34; State Freight Tax, 15 Wall., 281; Ferry Co. v. State of Pennsylvania, 114 U. S., 196; Hardy v. Railway, 18 Am. and Eng. Ry. Cases, 432, and cases cited; Carton v. Railway, 59 Iowa, 148; Railway v. Railway Commissioners, 16 Am. and Eng. Ry. Cases, 1; Railway v. State of Mississippi, 41 Am. and Eng. Ry. Cases, 36; Baird v. Railway, 42 Am. and Eng. Ry. Cases, 281; Stanley v. Railway, 42 Am. and Eng. Ry. Cases, 328; Mattingly v. Railway, 4th Annual Report of the Interstate Commerce Commission, p. 91.

Authorities under fourth proposition: Hart v. Railway, 112 U. S., 338; Mfg. Co. v. Railway, 3 Wall., 107; Railway v. Manchester Mills, 14 S. W. Rep., 314; Lancaster Mills v. Cotton Storage Co., 14 S. W. Rep., 317.

5. Declarations of the agent to be competent evidence against the master must be coincident with the events to which they relate, and must be shown to be within the personal knowledge of the agent and within the scope of his authority. Where declarations, written or oral, offered in evidence are merely narrative of a past occurrence, they can not be·received as proof of the existence of such occurrence. The agent must have had personal knowledge of the facts, for the law of evidence rejects all hearsay reports or statements of facts in question. Greenl. on Ev., secs. 110, 113, 124, Cotton v. Campbell, 3 Texas, 493; McAlpine v. Ziller, 17 Texas, 508; Alklin v. Paschal, 48 Texas, 147; Dunn v. Choate, 4 Texas, 14; Wooten v. Dunlap, 20 Texas, 183; Bateman v. Bateman, 21 Texas, 432; Loftin v. Nally, 24 Texas, 565; Robertson v. Moore, 25 Texas, 428; Hooper v. Hall, 30 Texas, 154; Brown v. The State, 32 Texas, 125; Kauffman & Runge v. Shellworth, 64 Texas, 179; Ins. Co. v. Pruitt, 65 Texas, 125; Reeves County v. Pecos County, 69 Texas, 177; Nye v. Gribble, 70 Texas, 458; Veck v. Holt, 71 Texas, 715.

*Leake, Shepard & Miller*, for appellees.—1. The bill of lading, though nominally a through bill of foreign shipment, is in reality domestic, because by its terms the liability of the railway company is limited to its own line and ends with the delivery of the cotton to the steamship company at Galveston, within the limits of the State of Texas, where its bill of lading was to be taken up and another given by the steamship company, whose liability then attached; this contract, limiting its liability to its own lines entirely within the State of Texas, being one permitted by the laws of said State. Railway v. Baird, 75 Texas, 256. Notwithstanding the guaranty of fixed through rate and delivery as specified in the bill of lading, said bill of lading is strictly local and domestic—one wholly to be performed within the State, in so far as the Missouri Pacific Railway Company is concerned. Heisermann v. Railway, 63 Iowa, 732; Stone v. Loan and Trust Co., 116 U. S., 333, 334.

2. The statute of Texas prohibiting limitation of the common law liability of carriers, controls the contract, notwithstanding it may be for shipment to points in other or foreign states; and is not a regulation of interstate commerce, but is purely within the power of the State, as it merely regulates the contract of shipment and imposes no condition, restriction, or burden whatever upon commerce. Each State has the undisputed right to make laws regulating the execution, form of, and remedies for all contracts made within its limits; and all contracts made within the State are presumed to be executed in accordance with the laws thereof, unless it is expressly stipulated that they shall be con-

trolled by the laws of some foreign State wherein they may be partially performed.

3. Grant appellant's contention, that the bill of lading is exclusively foreign, and that the Texas statute as applied thereto within the State limits incidentally affects foreign commerce; and grant further, that it may be within the power of Congress to regulate the execution, form, stipulations, etc., of such bills of lading; it has never attempted to do so, nor to prohibit the same to the States. The "interstate commerce act" is limited in its object and application, and has no provision whatever affecting this question.

To the effect that the law is a regulation of the contract merely, and is controlled by the law of the place where made: Steam Co. v. Ins. Co., 129 U. S., 397; Railway v. Fairchild, 69 Ills., 260; Talbot v. Dispatch Co., 41 Iowa, 247; Hale v. Nav. Co., 15 Conn., 539; Arroya v. Currell, 1 La., 528; Ryan v. Railway, 65 Texas, 13; Cantu v. Bennett, 39 Texas, 304.

To the effect that the statute of Texas is within the police power of the State, and is not a regulation of interstate commerce as such: Railway v. Fuller, 17 Wall., 560; Sherlock v. Allig, 93 U. S., 99; Smith v. Alabama, 124 U. S., 463, 476, 481; Railway v. Alabama, 128 U. S., 96; Steam Co. v. Ins. Co., 129 U. S., 397; Cardwell v. Bridge Co., 113 U. S., 505; Railway v. Iowa, 94 U. S., 155, 163; Peik v. Railway, 94 U. S., 164, see 177; Railway v. Dwyer, 75 Texas, 572; Coal Co. v. Railway, 15 R. I., 303; Telegraph Co. v. Pendleton, 95 Ind., 12; Railway v. Cotton Mills, 7 S. E. Rep., 916, 919.

4. It was not error to permit plaintiff to read in evidence the memorandum of the cotton burned which had been furnished by the freight claim agent of the defendant for the information of the consignees. Morse v. Railway, 6 Gray, 450; Burnside v. Railway, 93 Am. Dec., 474; Express Co. v. Harris, 21 N. E. Rep., 430.

TARLTON, JUDGE, *Section B.* — Appellees, as plaintiffs, brought this suit September 29, 1888, in the District Court of Dallas County, to recover from appellant, as defendant, the sum of $13,770, besides interest, the alleged value of 270 bales of cotton, which defendant failed to deliver, according to its contract, at Liverpool, England.

The petition avers, that the defendant is a corporation created under and by virtue of the laws of the State of Texas. It alleges, that on November 14, 1887, Martin, Wise & Fitzhugh, of Paris, Texas, purchased 500 bales of cotton on account of plaintiffs, which they delivered to the defendant at Greenville, Texas, to be by it carried on its lines in Texas and forwarded to the city of Liverpool, England; that defendant received the cotton and undertook and promised, in consideration of 136 cents per hundred pounds, to carry upon its lines in Texas, and to have carried by its connecting lines, the 500 bales of cotton, and

deliver them to Martin, Wise & Fitzhugh, or their assigns, at Liverpool; that thereupon defendant executed to Martin, Wise & Fitzhugh, plaintiffs' agents, five bills of lading, by which it acknowledged the receipt of the cotton, and agreed to carry the same upon its lines and to deliver it to its connecting lines, to be carried to the city of New Orleans, Louisiana, there to be delivered to the West India Pacific Steamship Company, and to be transported to Liverpool and delivered to Martin, Wise & Fitzhugh, or their assigns; that the bills of lading which contained the written direction, "Notify Sherwood, Thompson & Co., Liverpool, England," were duly assigned and delivered to plaintiffs; that of the 500 bales so shipped the defendant failed to deliver 270 bales, which plaintiffs charge were lost or destroyed while in the possession of defendant within the limits of Texas, or converted by it to its own use.

The defendant pleaded a general demurrer, general denial, and specially as follows: that it is a corporation, duly and legally incorporated under the laws of the State of Missouri; that it is a railway, and that its line of railway, and especially that part of it over which said cotton was to be shipped, does not now, and at the time of the alleged shipment did not, lie wholly within the State of Texas, but partly within said State and partly without said State; that, as alleged by plaintiffs, it delivered said five bills of lading to Martin, Wise & Fitzhugh, which were duly assigned and delivered to plaintiffs; that plaintiffs received and accepted the same, subject to the terms and conditions thereof; that under and by virtue of the terms of said five bills of lading the same were foreign shipments from the town of Greenville, Texas, to the city of Liverpool, England; that they were not shipments wholly within the State of Texas; that in said five bills of lading, and in each of them, it was expressly agreed and stipulated that this defendant should not be liable for loss or damage of said cotton by fire or other casualty while in transit, or while in deposit or place of transshipment, or depots, or landings, or at the points of delivery; that if said cotton was destroyed, as claimed by plaintiffs, it was destroyed by fire at Greenville, Texas, while in transit, while in the Greenville compress, in nowise owned or operated by this defendant, while awaiting to be compressed, as provided by said bills of lading; that if it was destroyed in said compress it was by fire, without fault or negligence on defendant's part, or on the part of its servants or agents.

Plaintiffs, by supplemental petition, demurred to defendant's plea setting up said exemption from liability for loss by fire as a stipulation of said bills of lading, on the ground that the same is unreasonable, contrary to public policy, and prohibited by the laws of the State of Texas.

Plaintiffs also replied specially, that the defendant railway at the time of the contract was wholly within the State of Texas, and that in order to carry the plaintiffs' cotton from Greenville to its destination

the defendant would have been compelled to deliver the same on the boundary of Texas to some other carrier; that the contract of shipment, or bill of lading, by its express terms stipulates, and said stipulation is permissible by the laws of Texas, that "for all loss or damage occurring in the transportation of said cotton, the legal remedy shall be against the particular carrier only in whose custody the cotton may be at the time of the happening thereof;" that it is further expressly provided in the contract, "that the liability of the defendant is limited to its own line of railway, and is to cease upon delivery to the next succeeding carrier of the freight specified in said bill of lading," etc.

The bill of lading, read in evidence, shows that the cotton was received at Greenville, Texas, to be carried from that point to Liverpool, England. It also provides, that the Missouri Pacific Railway Company and its connections, which received said property, shall not be liable for loss or damage by fire or other casualty. It further provides, that in the case of loss or damage that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening of such loss or damage. It is also provided, that the loss shall be computed at the value or cost of the goods and property at the place and time of shipment. It is further agreed, that the Missouri Pacific Railway Company has the liberty to forward the property to the port of destination by any other steamer or steamship company than that named, and that the liability of the Missouri Pacific Railway as a common carrier terminates on the delivery of the property to the steamship, or its agent, at Galveston, when the responsibility of the steamship commences, and not before; further, the property shall be transported from Galveston, Texas, to Liverpool, England, by the steamship of the West India Pacific Steamship Company. It is provided also, that the bill of lading, duly indorsed by consignees, is to be given up on demand of the agent of the steamer, in exchange for the ship's copy and order of delivery. It is further provided, that the liability of the Missouri Pacific Railway Company is hereby limited to its own line of railway, and is to cease upon delivery to the next succeeding carrier. The bill of lading is signed for the railway company by A. L. Downer, who signs as agent severally, but not jointly, for the railway and steamship companies.

The court sustained plaintiffs' exception to defendant's plea setting up its exemption from liability for loss by fire, and trying the case without a jury, September 10, 1890, rendered judgment for the plaintiffs in the sum of $16,493.36, principal and interest. From this judgment defendant appeals.

The first question to be considered is, did the court err in sustaining the special exception addressed by plaintiffs to defendant's answer?

The defendant seeks to shield itself under the stipulation that it should not be liable for loss by fire while in transit, or while in de-

posit, or place of transshipment, or depots, or landings, or at points of delivery. By such loss, we understand a loss due to fire which is not directly traceable to the negligence of the carrier or his servant. Porter's Law of Bills of Lading, sec. 223, pp. 161, 162, note 1. It is alleged in the defendant's answer, that if the cotton was destroyed, it was destroyed by fire at Greenville, Texas, without fault or negligence of defendant or its servants, while in transit, while in the Greenville compress, in nowise owned or operated by defendant, while awaiting to be compressed, as provided by the bills of lading. Fire occurring under such circumstances, in view of the exemption clause in the bill of lading pleaded by defendant, is not to be ascribed to the negligence of the carrier. Lancaster Mills v. Storage Co., 14 S. W. Rep., 317. That a common carrier may, unless forbidden by statute, so contract as to exempt itself from liability for loss by fire unless caused by the negligence of itself or its servants, is well settled. Such a limitation is reasonable. Railway v. Harris, 67 Texas, 166; 3 Wall., 107; 21 Wall., 264; Hart v. Railway, 112 U. S., 338. Appellees, however, claim that the restriction here pleaded is forbidden by our statute, article 278, Revised Statutes, which reads as follows: "Railroad companies and other common carriers of goods, wares, and merchandise, for hire, within this State, on land or in boats or vessels on the waters entirely within the body of this State, shall not limit or restrict their liability as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any other manner whatever; and no special agreement made in contravention of the foregoing provisions of this article shall be valid."

Appellant holds that appellees can not invoke the provisions of this statute, because: (1) The shipment here involved is not a domestic, but is a foreign or an interstate shipment; (2) the statute applies only to domestic shipments; (3) if the statute be intended to apply to foreign shipments and to annul a contract of foreign shipment exempting a carrier from liability from loss by fire not chargeable to its negligence, the statute is a regulation of interstate commerce, and as to such regulation is void.

1. Is the contract of shipment set out in the petition of appellees a contract of domestic or a contract of foreign or interstate shipment? By a contract of domestic shipment is understood such a contract as contemplates the shipment of goods from one point in a State to another point therein. By a contract of foreign or interstate shipment is understood such a contract as contemplates the transportation thereunder of goods from a point within a State to a foreign country or to a point within another State. Transportation is only domestic when confined to the boundaries of the State in which the contract of shipment is entered into. Railway v. Illinois, 118 U. S., 557; Railway v.

Ry. Comm. of Tenn., 16 Am. and Eng. Ry. Cases, 1. Applying these definitions to the contract set out in plaintiffs' petition, the conclusion is inevitable that the shipment there described is a foreign shipment. The petition alleges an undertaking on the part of the carrier, defendant, to carry the cotton upon its lines and to deliver it to its connecting lines, to be carried to the city of New Orleans, Louisiana, there to be delivered to the West India Pacific Steamship Company, to be transported to Liverpool, and there delivered to Martin, Wise & Fitzhugh, or their assigns.

2. Does the statute referred to apply to an interstate or foreign shipment? This question has been several times suggested to our Supreme Court, but the disposition of the cases in which it was presented did not require a solution of it. Ryan v. Railway, 65 Texas, 13; Railway v. Harris, 67 Texas, 166; Railway v. Mfg. Co., 79 Texas, 26. We are of opinion that the question must be answered in the negative; that the statute applies to shipments purely domestic, beginning and ending in the State of Texas. Our conclusion is founded upon the language of the statute itself: "Railroad companies and other common carriers * * * within this State, on land or in boats or vessels on the waters entirely within the body of this State, shall not limit or restrict their liability as it exists at common law." Railways and other common carriers within this State on land are put, as to transportation, upon the same plane, so to speak, as boats or vessels on the waters entirely within the body of this State. As to transportation within the State, they are forbidden to limit their liability as it exists at common law. The limitation prescribed by the statute, if it be more extended as to railways than to boats or vessels, is so only in the sense that as to the former it is not confined to carriers operating exclusively within the State, while as to the latter it is restricted to carriers plying on waters wholly within the State. The track of a railway company may extend beyond the limits of the State, yet if goods be carried by it from one point to another within this State, such carriage constitutes transportation within this State, and such railway is a "carrier within this State." But if the railway, whether by itself or by its connecting lines, its agents, transports goods from a point within this State to a point in another State, it is a carrier, not "within this State," but within and out of this State into another. In the latter event, it is engaged in interstate commerce. With reference to its domestic character, we do not think that any discrimination was intended by the Legislature between a shipment by water and by rail. The scope of the limitation is logically the same, whether applied to the carrier as a railway or as a steamboat. Transportation "within this State" is in either case the subject matter of the legislation. Our Legislature seems to have had in mind in the adoption of this statute, article 1, section 8, of the Fed-

eral Constitution investing Congress with the power to regulate commerce among the States.

3.  Having concluded that article 278 applies only to domestic shipments, and that the shipment described in the plaintiff's petition is not a domestic shipment, it becomes unnecessary to discuss, and we consequently refrain from considering, the third question presented by appellants, viz., the validity or invalidity of this statute as a regulation of interstate or foreign commerce, provided it was intended to apply to such commerce.

Appellees seem to contend that, without reference to the action of the court on their demurrer, the judgment is nevertheless proper, because the bill of lading, though nominally a through bill of lading, is, so far as the Missouri Pacific Railway is concerned, in reality domestic; that it is a domestic bill, "because (as they contend) by its terms the liability of the railway company is limited to its own line and ends with the delivery of the cotton to the steamship company at Galveston, within the limits of the State of Texas, where its bill of lading was to be taken up and another given by the steamship company, whose liability then attached."

The bill of lading described in plaintiffs' original petition provides for a transportation of the cotton from Greenville, Texas, by the Missouri Pacific Railway Company and its connecting lines, through Louisiana to New Orleans, and thence to Liverpool. It is silent as to a limitation by the company of its liability to its own line. The bill of lading described in the plaintiffs' supplemental petition (in which it is alleged that the defendant's railway was at the time wholly within the State of Texas) provides, "that the liability of the defendant is limited to its own line of railway." The bill introduced in evidence purports on its face to be a foreign bill of lading. It provides for the transportation by the Missouri Pacific Railway Company of the cotton at the rate of 136 cents per hundred pounds from Greenville, Texas, to Liverpool, England; it provides that the liability of the company is limited to its own line of railway, and is to cease on the delivery of the goods to the steamship company or their agent, at Galveston, when the liability of the steamship company commences, and not before. The bill is signed for the railway company by A. L. Downer, who signs as agent, severally but not jointly, for the railway and steamship companies.

It will be seen that the bill of lading introduced in evidence differs from that described in the original petition, though it is perhaps supported by the averments of the supplemental petition.

Does the provision limiting the liability of the company to its own line terminating at Galveston so affect the character of the instrument as to make of it a domestic bill of lading? We think not. The instrument on its face purports to be a foreign bill of lading. It constitutes, as we view it, an undertaking on the part of the carrier defendant

to transport and have transported from Greenville, Texas, to Liverpool, England, the cotton in question. It provides for a rate of freight between these points of 136 cents per hundred pounds. It contemplates a continuous transportation from Greenville, Texas, to Liverpool, England. These are all features of a "through" contract of shipment. Porter on Bills of Lading, secs. 323, 324, 326, 331. In Liverpool Steam Company v. Phœnix Insurance Company, 129 United States, 470, a bill of lading providing for a shipment from Nashville, Tennessee, to Liverpool, England, and limiting the liability of the connecting carriers to their own lines, was treated by the Supreme Court of the United States as a through shipment.

The stipulation referred to was intended, we think, solely to qualify the responsibility of the carrier, without affecting the character of the shipment as a through shipment. We can not regard the bill of lading in question as a mere receipt by the carrier of goods, marked for a destination beyond the terminus of its route. It is more; it is a contract of shipment, and an undertaking to transport from Texas to a foreign country. Our attention is called by appellees, in support of their proposition already stated, to the case of Heiserman v. Railway, 63 Iowa, 732. In that case, while it was true that goods shipped at West Union, Iowa, were destined for Milwaukee, Wisconsin, the contract of the carrier was to transport them from West Union to Postville, Iowa, and no further. The goods under the contract with the carrier were to be transported and delivered at Postville, where the freight for such transportation was to be paid to the carrier. This was plainly a domestic shipment, the carrier not having contracted to carry the goods or to have them carried to Milwaukee.

One A. H. O'Neal testified by deposition for plaintiffs as to the loss of the cotton in question. Attached to his deposition as a part of his answer was a statement read in evidence to prove the burning of the cotton. This statement was furnished Martin, Wise & Fitzhugh by C. H. Dent, freight claim agent of the Missouri Pacific Railway Company, to enable Martin, Wise & Fitzhugh to be in position to officially notify the consignees of the cotton that their cotton had been destroyed by fire, in order that they might take such steps as in their judgment might be proper and necessary. The witness testified, that he believed the statement was made out personally by Dent, and was in his handwriting, and that he believed it to be correct. The statement is tabulated, showing the names of consignors, consignees, date and number of bills of lading, and marks of cotton, and showed that it was destroyed by fire at Greenville, Texas, November 14, 1887.

Objection was made to the introduction of the statement; because (1) there was not sufficient evidence to establish that the statement was made by C. H. Dent; (2) if made by Dent, the statement was not res

gestæ, and there was no evidence showing that he had authority to bind defendant by such statement.

The evidence showed that the statement was furnished by Dent, and was sufficient, we think, to constitute it his declaration.    But admitting this to have been the fact, was it binding on the company?    The rule is, that declarations of an agent to be admissible must be within the scope of their authority, and "while the transaction is yet depending." In Burnside v. Railway, 93 American Decisions, 474, the declarations of a general freight agent concerning goods delivered to him for transportation were held to be admissible against the company, though made eight months after their delivery to him, it appearing that the carrier's duty had not yet terminated.

In making the statement here in question, it does not appear whether or not Dent was acting within the scope of his agency.    We are nowhere apprised of the extent of his authority except by the use of the term "freight claim agent," and about the duties and powers of such an agent the record is silent.    Until it had been made to appear that such a statement was made in the discharge of the agent's duties or within the scope of his powers, and while the obligation of the carrier with reference to the cotton yet continued, the statement should have been excluded.

The witness O'Neal testified, that at the time of the loss of the cotton in question he was the general manager of Martin, Wise & Fitzhugh, located at Paris; that the 473 bales of cotton were destroyed by fire on November 14, 1887, at Greenville, and, as far as witness knows, were not delivered; that he knows this cotton was destroyed by fire at Greenville, Texas, November 14, 1887, of his own knowledge, as far as it is possible for him to know it without actually seeing it burn.    Defendant objected to this testimony, because it appeared that on November 14, 1887, witness lived at Paris, and was not at Greenville, and that his evidence as to the burning of the cotton is hearsay.

We are unable to say that the knowledge of the witness, to the existence of which he swears, was formed on pure hearsay.    There are conditions in which one can acquire knowledge without seeing.    We can not adjudge that the action of the court in admitting the evidence was erroneous.    While it appears that the witness was at the time stated located in business at Paris, it does not appear that he was not at Greenville on November 14, 1887.    And while he did not see the fire which consumed the cotton, his statement may have been based on information derived from a source which would bind defendant.    The cross-examiner did not sufficiently probe the sources of the witness' knowledge to justify us in holding that it was founded entirely on hearsay, rendering his testimony inadmissible.

With reference to the value of the cotton, the witness O'Neal was permitted to testify, that the value of 473 bales of cotton, of which the

cotton involved in this suit was a part, was in excess of $23,649.20. The testimony was objected to as irrelevant, immaterial, and incompetent. We think that the evidence tended at least to prove the value of the cotton lost, and that it was admissible. We do not, however, hold that it was sufficient to prove such value, in the absence of facts showing at least the average weights, value, and quality of the cotton, or showing that such average weights, value, or quality could not be ascertained.

The judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 22, 1892.

A motion for rehearing was overruled at Austin Term.