THE TEXAS & PACIFIC RAILWAY COMPANY v. D. F. CLARK.

No. 46.

**Overcharge on Freight — Interstate Shipments — Statute Construed — Jurisdiction.** — In a suit against the Texas & Pacific Railway Company, to recover the penalty prescribed in article 4258, Revised Statutes, for a discrimination and overcharge in freight rates, the petition alleged and the proof showed, that the penalty claimed for the discrimination and overcharge was based on a through bill of lading executed by the Missouri, Kansas & Texas Railway Company, to transport the freight therein mentioned from St. Louis. Missouri, to Wills Point, Texas.  By the provisions of the bill of lading, the Missouri, Kansas & Texas Railway Company was to deliver to connecting lines, and to be liable only for damage or loss occurring on its own line, a through rate of freight having been guaranteed to destination.   The Missouri, Kansas & Texas Railway connects with the Texas & Pacific Railway at Mineola, Texas, and the entire haul of the Texas & Pacific Railway Company was within the State of Texas.   *Held:*

1.   The transaction constitutes an interstate shipment, and does not come within the purview of articles 4257 and 4258, Revised Statutes of Texas, prescribing a penalty for unjust discrimination and overcharge in the rates for transportation of freight, which apply only to shipments between points within this State.

2.   The Constitution of the United States vests in Congress the power to regulate commerce between the States, and this precludes the rights of the States to make any regulations in reference to the same.   But it is not held that the States can not make police regulations with proper limitations relative to interstate commerce.

3.   If the statute of this State be enforced in such shipments as this, it would be exercising jurisdiction in a matter over which Congress has exclusive jurisdiction.

APPEAL from the County Court of Van Zandt.   Tried below before Hon. JOHN S. SPINKS.

*Woods & Gossett*, for appellant.—The power to regulate interstate commerce was by the States delegated to Congress in framing and adopting

the Federal Constitution, and when Congress saw fit to exercise the Federal authority relative to interstate commerce, it thereby excluded the right of a State to regulate the same, either directly or indirectly, because the power of Congress thus exercised is exclusive.  18 Fed. Rep., 10; 118 U. S., 570; 118 U. S., 557; 17 Wall., 560; 9 Wheat., 1; 12 Wheat., 419; 24 How., 169; 95 U. S., 465; 91 U. S., 275; Receivers v. Fischl, 1 Texas Civ. App., 546.

*Lively & Reese* and *Waldert & Johnson*, for appellee.—In so far as they are of domestic concern, a State may regulate freight charges over lines of railway within the State, although that regulation may incidentally affect their interests without the State.  Peik v. Railway, 94 U. S., 178; Munn v. Illinois, 94 U. S., 113.

RAINEY, ASSOCIATE JUSTICE.—Appellee Clark brought this suit against appellant to recover the penalty prescribed in article 4258, Revised Statutes, alleging, that there was an overcharge on freight, and that there was a discrimination against him in charging him a greater rate than other persons.  Defendant plead generally, that if there was an overcharge, it was not the act of defendant, and that the shipment came under the Interstate Commerce Act of Congress, and it was not therefore liable in this suit.  A trial was had, resulting in a verdict for plaintiff, from which an appeal was taken.

If the third assignment of error is well taken, it is decisive of this case, and appellee can not recover.  It is:  "The court erred in refusing to sustain defendant's special demurrer, setting up that the freight shipment herein complained about, and the overcharge thereon, was clearly a subject matter that is to be adjusted under the Interstate Commerce Act of Congress, and therefore not subject to the jurisdiction of a State court."

The plaintiff's petition distinctly alleged, and the proof so shows, that the penalty claimed for the overcharge and discrimination was based on a through bill of lading, executed by the Missouri, Kansas & Texas Railway Company, to transport the freight therein mentioned from St. Louis, Missouri, to Wills Point, in Van Zandt County, Texas.  By the provisions of said bill of lading the Missouri, Kansas & Texas Railway Company was to deliver to connecting lines, and only be liable for damage or loss occurring on its own line.  A through rate of freight was guaranteed to the point of destination.

Said road connects with the Texas & Pacific Railway at Mineola, Texas, and the entire haul of the appellant's road was within the State of Texas. Article 4257, Revised Statutes, provides, that railroads shall not charge a greater rate than " 50 cents per 100 pounds per 100 miles for the transportation of freight over their roads; that the rates shall be uniform, and

no unjust discrimination in the rates for transportation shall be made against any person or place," etc.

Article 4258, Revised Statutes, prescribes a penalty of $500 for the violation of the provisions of said article 4257.

Does the transaction under investigation come within the purview of the foregoing statute; or is it such a transaction that it comes within such regulation of commerce between the States as the Congress of the United States has the power only to make?

In the leading case of Wabash Railway Company v. Illinois, 118 United States, 557, the facts show, that two shipments were made in Illinois over the same road to New York City. The railroad charged for one shipment 15 cents per 100 pounds, and for the other 25 cents, the freight in both instances being of the same class. In an action brought by one of the consignors against the road for unjust discrimination, under the statute of Illinois, which is similar to the statute of this State on the same subject, the court held, that such were interstate shipments, and did not fall within the regulations prescribed by the laws of Illinois.

In Missouri Pacific Railway Company v. Sherwood, Thompson & Co., 84 Texas, 125, the railway company received a lot of cotton at Greenville, Texas, to be by it carried on its lines in Texas and forwarded to Liverpool, England, executing therefor a through bill of lading, though restricting liability to its own line. Said cotton was delivered by said railway company to the West India Pacific Steamship Company, at Galveston, Texas. Suit was instituted against said company for loss. The only question raised in that case that is material is this: Was the shipment interstate or not? Justice Tarlton, in a very elaborate and well considered opinion, held that it was an interstate shipment. In that case stress was laid upon the provision in the bill of lading, that the railway company's liability should cease upon delivery to a connecting carrier, and that such delivery was made at Galveston, within this State. The shippers contended that these facts constituted a domestic shipment; that as the cotton was not transported out of the State, and the railway's liability ceased upon delivery to a connecting carrier, it was in no sense a foreign shipment, but came exclusively within the laws of Texas. The court said: " The track of a railway company may extend beyond the limits of a State, yet if goods be carried by it from one point to another within this State, such carriage constitutes transportation within this State, and such railway is a carrier within this State. But if the railway, whether by itself or by its connecting lines, its agents, transports goods from a point within this State to a point within another State, it is a carrier, not within the State, but within and out of this State into another. In the latter event, it is engaged in interstate commerce."

There is no conflict on this point between the decisions above mentioned and the case at bar, except in those cases the freight was to be

transported out of the State, while in this case the freight was coming from without to within the State. This, in principle, can make no possible difference.

In the case of Receiver v. Fischl, 1 Texas Civil Appeals, 546, the St. Louis, Arkansas & Texas Railway Company received a lot of flour at St. Louis, Missouri, to be transported to Texas by said line, via the Gulf, Colorado & Santa Fe Railway Company, to Brenham, at a certain rate. When the flour reached Corsicana, it was delivered to the Houston & Texas Central Railway, which transported it to Brenham. After reaching Brenham, the consignee tendered the amount of freight specified in the bill of lading, and demanded the flour. The road refused to deliver unless a greater rate than that charged in the bill of lading was paid, which the consignee would not pay. After waiting awhile, he sued the company for the penalty prescribed by the statute for detention of freight. The court said: "These facts show that the flour was interstate commerce, and that the defendant company and its connecting line, the said St. Louis, Arkansas & Texas Railway Company, were common carriers engaged in carrying interstate freight, and were answerable to the laws of Congress regulating interstate traffic."

There can be no question, then, but that the transaction under consideration constitutes an interstate shipment. Is there anything, then, that will bring this case within the provisions of the statute under which this action was brought? We think not.

The Constitution of the United States vests in Congress the power to regulate commerce between the States. This precludes the rights of the States to make any regulations in reference to the same whatever. We do not wish to be understood as holding that the States can not make police regulations relative to interstate commerce, within proper limitations. Justice Gaines, in Railway v. Dwyer, 75 Texas, 572, having under consideration the construction of the State statute prescribing a penalty for the detention of freight by the railroad, as to whether the same infringed the rights of Congress to regulate commerce between the States, decided that such statute was a police regulation, and came within the scope of the State's authority. But he further said: "A State can make no law regulating the rate of freight for the carriage of goods between that and another State, although the regulation be construed as applying only to so much of the line of transit as lies within its own borders "

The law under which the plaintiff in this case seeks to recover is for the purpose of regulating freight rates. It fixes the maximum rate that can be charged in this State by a railway company. It prescribes a penalty for overcharge, and for unjust discrimination. This statute applies only to shipments between points within the State. To enforce it in this transaction would be an infringement upon the powers expressly dele-

gated to Congress in the regulation of commerce between the States. The Congress of the United States, it seems, thought it had jurisdiction of such commerce. Its act entitled "An Act to regulate commerce," approved in 1887, and its amendments, provide, that after rates have been agreed to and fixed by carriers, they shall publish same and furnish the Interstate Railway Commission with such rates, and after such rates have been thus established and continuing in force, a higher or lower rate can not be charged than that agreed upon and established, and for the violation of which fine and imprisonment are prescribed.

It will thus be seen that if the statute of this State is enforced in such transactions as this, it will be exercising jurisdiction in a matter over which Congress has exclusive jurisdiction.

For the reasons above set forth, we are of the opinion that the appellee has no right to recover, and therefore this cause is reversed and remanded.

*Reversed and remanded.*

Delivered October 18, 1893.