the plaintiff relief. The defendants are in this state, and have been served with process. It is a fundamental principle of equity that it acts in personam, and not in rem; and from very early times, both in England and in this country, it has, upon occasion, decreed specific performance of contracts respecting land in foreign states and countries, and restrained the alienation of such lands. This jurisdiction, although not there first asserted, was firmly established in the well-known case of Penn v. Lord Baltimore, 1 Ves. Sr. 444. In this state it has been frequently recognized. In Bailey v. Ryder, 10 N. Y. 363, specific performance was decreed respecting lands in Indiana; and in Gardner v. Ogden, 22 N. Y. 327, 78 Am. Dec. 192, a similar judgment was affirmed respecting lands in Illinois. It is true that no decree the court may make can operate directly upon the lands them-selves, but it can be rendered effective against the defendants who are within the reach of the court. So far as concerns the mortgage, the plaintiff does not seek a decree which will avoid it ipso facto, as such a decree might do if the mortgage were recorded in this state, but a decree compelling the mortgagee to execute and deliver a release or satisfaction piece, whereby satisfaction of record can be obtained in New Jersey. Jurisdiction to make the order applied for is, I think, unquestionable, and the facts, in my opinion, warrant it.

Motion granted, with $10 costs.

---

(36 Misc. Rep. 705.)

ROBINSON v. NEW YORK & T. S. S. CO.

(Supreme Court, Trial Term, New York County. January, 1902.)

1. CUSTOM—EVIDENCE—BILL OF LADING.
   A provision in a bill of lading that, if the articles named therein shall be conveyed in part by water, they shall "be subject to all customary conditions of same," does not exempt the carrier from loss by fire, on the ground that in contracts for transportation of goods there is a well-established usage for exemptions covering loss by fire, unless it be shown that the custom is reasonable, uniform, well settled, not in opposition to fixed rules of law, nor in contradiction of the express terms of the contract.

2. CARRIER—NEGLIGENCE—LOSS BY FIRE.
   Where plaintiff sues a common carrier on his common-law liability for negligence in permitting goods of his assignor to be destroyed by fire, he is not required to recover on the contract as shown by the bill of lading from the fact that he put it in evidence.

Action by Charles S. Robinson against the New York & Texas Steamship Company to recover a loss by fire. Judgment for plaintiff.

Carter, Hughes & Dwight, for plaintiff.
T. B. Hewitt, for defendant.

GILDERSLEEVE, J. This action was tried by the court without a jury. It is brought to recover $6,370.88,—the value of 366 bags of wool destroyed by fire on July 2, 1896, while in the possession of the defendant, and at its wharf at Galveston, Tex., awaiting transportation to New York. The wool in question was owned by

the Slater Woolen Company, of Webster, Mass., and had been shipped by its agent in two lots,—one of 298 bags, at San Angelo, Tex., by the Gulf, Colorado & Santa Fé Railway Company, on June 27, 1896, and the other lot of 156 bags at Walnut Springs, Tex., by the Texas Central Railroad Company, on June 24, 1896.   The Texas Central Railroad Company carried its lot to Morgan, Tex., and there delivered it to the Gulf, Colorado & Santa Fé Railway Company, and the latter delivered both lots to the defendant at Galveston on July 1, 1896.   The next day, while the two lots of wool were in the possession of the defendant, as we have seen, on its wharf, a fire occurred by which both lots were destroyed.   The plaintiff is the assignee of the claim of the Slater Woolen Company against defendant for the loss of the wool.   Each of the railroad companies above mentioned issued a bill of lading at the time of the original shipments at San Angelo and Walnut Springs, respectively; but no bill of lading or written contract was executed by the Gulf, Colorado & Santa Fé Railway Company on the receipt of the Walnut Springs shipment at Morgan, or by the defendant on receipt of either shipment at Galveston.   The defendant merely gave receipts.   A former trial was had, upon which the defendant was successful, but the appellate division reversed the judgment and ordered a new trial.   63 App. Div. 211, 71 N. Y. Supp. 424.

The defendant claims exemption from its common-law liability for the loss of the goods, because of certain provisions in the original bills of lading, and on the ground that it held the goods as warehouseman, and not as common carrier.   It is defendant's contention that each of the bills of lading covered the wool shipped under it from the time of shipment down to and including the time of its destruction by fire, and that no recovery can be had against defendant except under the terms of the bills of lading, and that under these bills of lading, respectively, the defendant is not liable for loss by fire occurring on the wharf without negligence on its part.   Defendant further urges that the evidence establishes the fact that the fire occurred through no negligence of the defendant, and that defendant's servants did everything that could be done to save the goods in question.   It does not appear that the fire was due to want of care on the part of defendant.   There was also some discussion at the trial with regard to a statute of Texas bearing upon the liability of carriers where goods are stored before transportation; but, as these goods were received at Galveston for carriage to New York, the contract was one for interstate shipment, and the obligations incident thereto are not subject to modification by a state statute. Railway Co. v. Sherwood, 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643; Houston Direct Nav. Co. v. Insurance Co. of North America, 89 Tex. 1, 32 S. W. 889, 30 L. R. A. 713, 59 Am. St. Rep. 17.   The law of the case has been clearly laid down by the appellate division on the appeal from the result of the former trial.   The controlling principles are as follows, viz.:   Where goods are shipped over the lines of successive common carriers, and, by the terms of the bill of lading issued by the initial carrier, the contract of such carrier covers all the lines between the point of shipment and the destination

of the goods, the initial carrier is liable for the faithful performance of duty by all the carriers, and each one of the successive carriers is entitled to such exemptions from liability as are contained in the bill of lading; but where by the bill of lading the initial carrier only contracts to deliver the goods at a designated place to another carrier, such connecting carrier is not entitled to any exemptions contained in the bill of lading. In the first instance the bill of lading is a "through" one; in the second case, not. The fact that it was known at the time of the shipment that the goods would go over different lines of successive carriers, and that appropriate marks indicated their ultimate destination, does not change the carrier's liability. A connecting carrier, which receives from the initial carrier goods not shipped under a "through" bill of lading, and stores them in its warehouse pending the arrival of its steamer, where, without its fault, before the arrival of the steamer, the goods are destroyed by fire, is liable for the value of the goods. So far as the San Angelo bill of lading is concerned, the appellate division has declared that it was not a "through" bill of lading, and that nothing in this bill of lading transferred any exemption to the defendant, and that when the defendant "received the goods and receipted therefor it did so as a common carrier, and its liability attached as such eo instante, and this relation was not changed by the fact that the wool was required to be stored pending the arrival of the defendant's steamer. For the loss of the wool thus received, the defendant is clearly liable."

The amount of wool shipped at San Angelo was, as we have seen, 298 bags. The other bill of lading, however,—the Walnut Springs bill,—is conceded to be a "through" bill, and, as held by the appellate division, the defendant is entitled to be protected by any exemption from liability within its terms. Under this bill of lading, as we have seen, 156 bags of wool were shipped. There is no express exemption, in terms, from loss sustained by fire in the Walnut Springs bill of lading. The defendant, however, claims exemption by virtue of the following clause in the bill, viz.:

"It is further stipulated that, in the event of the articles herein named being conveyed by water transportation en route to destination, they shall be subject to all customary conditions of same."

The defendant claims that there is a well-established usage and custom, generally known, that, in contracts for the transportation of goods by it, exemptions are always inserted covering losses sustained by fire, and therefore that this bill of lading is to be construed as though it contained, in terms, such exemption. In this connection the appellate division reiterates the rule that contracts exempting common carriers from liability are to be construed most rigidly against the carrier, and that such exemptions will not be presumed, but must be clearly expressed in the contract, and, if there be any ambiguity, it will be resolved against the carrier, and the burden of proving such exemption is upon the carrier. The appellate division goes on to state the law as follows, viz.:

"It is a well-settled rule of law that the general course of business in the transportation of property by a common carrier, when it appears to have

been generally established, may be shown, and will govern in the construction of a general engagement for shipment of property, where the proposal of the contracting party makes no reference to the exemptions and limitations of the carrier. * * * The rights and liabilities of these parties are to be determined from the construction of the language which they have used in the contract, and not from any conditions which existed prior to its execution, except so far as usage and custom may tend to aid in the interpretation of its terms."

Under the opinion in this case of the appellate division, I have only to determine if the defendant has satisfactorily established such a custom and usage as would warrant the court in concluding that an exemption from loss by fire was contemplated by the parties when the Walnut Springs bill of lading was issued. In the language of the appellate division:

"In order that custom and usage may be operative in the interpretation of a general or ambiguous clause, it must be shown to be reasonable, uniform, well settled, not in opposition to fixed rules of law, and not in contradiction of the express terms of the contract, and of such a character as will be deemed to have entered into the contemplation of the parties."

Has the defendant met the requirements of this rule? It will be remembered that the burden of proving the exemption is on defendant, and that all contracts of exemption are to be rigidly construed against the common carrier. From a careful consideration of the evidence, I reach the conclusion that the defendant has failed to satisfy the requirements imposed upon it in order to entitle it to a decision in its favor on the point in question. I do not think the exemption claimed can be said to have entered into the contemplation of the parties when the contract for shipment at Walnut Springs was made.

The defendant's point that the complaint should be dismissed on the ground that "the action is laid in tort, and, having put in evidence the bill of lading in his own case, if the plaintiff can recover it is upon contract," is without merit. The complaint is in the usual form, setting forth breach of the common carrier's undertaking to carry the goods safely. The plaintiff does not sue on the bill of lading, but relies on the acceptance by the defendant of the goods, without the issuance of any bill of lading, and on its common-law liability. The appellate division has held that defendant, upon accepting and receipting for the goods, assumed the liabilities of a common carrier, and was only protected by such exemptions as were expressed or might reasonably be implied in the Walnut Springs bill of lading, which, as we have seen, did not exempt loss sustained by fire. The plaintiff may have judgment for $5,876.60, being the value of the goods, less the amount paid by the defendant to the railroad company for freight, with interest from July 2, 1896, to the date of this decision, together with costs of the action, and an extra allowance of 5 per cent.

Judgment accordingly.