## TEXAS CO. v. STRANGE.

(Court of Civil Appeals of Texas. Dallas. Feb. 15, 1913.)

1. APPEAL AND ERROR (§ 766*) — ASSIGNMENTS OF ERROR—COMPLIANCE WITH RULES.

Consideration will not be denied assignments of error as not complying with Court of Civil Appeals rules 24, 25 (142 S. W. xii), for preparation of briefs; the brief having been prepared prior to publication of any judicial construction of the rules, and, while not in strict compliance with them, there having been an earnest endeavor to comply with them, and their spirit having been met.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3101; Dec. Dig. § 766.*]

2. EVIDENCE (§ 213*) — NEGOTIATIONS FOR COMPROMISE.

Evidence of negotiations in an endeavor to secure a compromise of claimed damages is not admissible in an action on the claim; the negotiations having failed.

[Ed. Note.—For other cases, see Evidence; Cent. Dig. §§ 745–751, 753; Dec. Dig. § 213.*]

3. DAMAGES (§ 171*) — PECUNIARY CONDITIONS—PERSONAL INJURIES.

As parading plaintiff's financial condition, evidence, in an action for personal injuries, that he has to work is improper.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 498; Dec. Dig. § 171.*]

4. WITNESSES (§ 383*)—IMPEACHMENT—COLLATERAL ISSUE.

Testimony, in an action for personal injury, as to an agent of defendant telling plaintiff after the accident not to worry about his job, that it was not his fault, and that defendant would take care of him, is as to a collateral issue, and therefore not subject to impeachment.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1224; Dec. Dig. § 383.*]

5. EVIDENCE (§ 243*)—STATEMENT OF AGENT AFTER EVENT.

Statement of defendant's agent subsequent to plaintiff's injury, and not while the transaction was pending, that plaintiff should not worry about his job, that it was not his fault, and defendant would take care of him, was a mere opinion, not admissible against defendant in an action for the injury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 908–915; Dec. Dig. § 243.*]

6. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS MORE SPECIFIC THAN INSTRUCTIONS GIVEN.

A requested charge in a servant's action for injury, applying the law of contributory negligence or assumption of risk to the facts in a specific and pointed way, which called the attention of the jury to the particular defense,

should be given, though the court charged on such issue; it not having grouped the facts and applied the law thereto as fully as presented in the requested special charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

7. MASTER AND SERVANT (§ 185*) — SAFE PLACE TO WORK—SCAFFOLDS—NONDELEGABLE DUTY.

The duty· of a master to furnish a servant a reasonably safe scaffold on which to work is not a delegable duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 419–423; Dec. Dig. § 185.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by D. W. Strange against the Texas Company. Judgment for plaintiff; defendant appeals. Reversed and remanded.

A. L. Beaty and Robt. A. John, both of Houston, and Allen & Flanary, of Dallas, for appellant. Chas. F. Clint and Chilton & Chilton, all of Dallas, for appellee.

RAINEY, C. J. This suit was brought by appellee against appellant to recover damages for personal injuries occasioned by the giving way of a scaffold erected for him to stand upon in laying brick upon a wall being erected in the construction of a building for appellant. This is the second appeal of this case; the former appeal being reported in 132 S. W. 370, to which reference is made for a fuller statement of the nature of the case.

[1] Objection is made by appellee to the consideration of the assignments presented in appellant's briefs, because they do not comply with rules Nos. 24 and 25 for the preparation of briefs in the Courts of Civil Appeals (142 S. W. xii). While the brief is not in strict compliance with said rules, there appears to have been an earnest endeavor to comply with the same. The assignments appear to be copies of the different grounds presented in the motion for a new trial, and reference is made, in connection with each assignment, to the page of the transcript where the motion for a trial is to be found. The spirit of the rules have been met, if not the letter thereof. When the briefs were prepared, there had been no construction of said rules published by any of our courts; and it would be a hardship to not consider the assignments when, under the circumstances, counsel had endeavored to comply with them. The objection is overruled, and the assignments will be considered.

[2] The first assignment of error relates to the following proceeding in the trial of the cause, viz.: "Plaintiff was asked by his counsel, 'Was there any effort ever made to secure a release from you?' To which question the defendant then and there objected, because irrelevant, immaterial, and incompetent. Said objection was by the court overruled, and defendant took its exception.

Plaintiff was thereupon asked by counsel the same question, to which the plaintiff replied, 'Did they try to get a release from me?' and to which his counsel answered, 'Yes,' and to which the plaintiff thereupon said, 'Yes, sir.' Whereupon the defendant interposed the further objection that if there was any effort of that kind it would be an effort to compromise and settle the case, and all negotiations with reference to a compromise, and to escape litigation, you might say, is protected; it is privileged; and it becomes immaterial and irrelevant and· incompetent upon the trial of the main suit; and thereupon the defendant moved, for these reasons, to strike out the answer of the plaintiff, to the effect that such an effort to secure a release from him had been made, which motion was by the court overruled, and to which the defendant then and there took its exception. Whereupon plaintiff was again asked by his counsel, 'When did they make the first effort to secure a release from you?' to which question objections were made by the defendant on the same grounds as theretofore made, and whereupon it was agreed by the court that it might be understood that the defendant objected from the inception of this question down to the end of it, concerning the matter of release, for the reasons indicated, and that it would not be necessary for the defendant to object to each one of the questions. Whereupon plaintiff was again asked by his counsel, 'When did they first approach you about a release?' and to which the plaintiff replied: 'If I am not mistaken, Judge, on the time, it was in January, 1908.' And thereupon plaintiff was further asked by his counsel: 'Well, did they at any other time?' and to which the plaintiff replied: 'Yes, sir; and in June, about the 17th day of June, 1908.' Thereupon plaintiff was asked by his counsel, 'Who was it that approached you about securing a release?' to which he answered: 'Mr. Dodge, the superintendent.' Plaintiff was then asked, 'Mr. Dodge was superintendent?' to which he replied: 'Yes, sir; the first time.' Plaintiff was then asked by his counsel, 'He was the superintendent of that whole plant?' to which he replied: 'Yes, sir. He asked me to sign a release, and I refused to do so. I told him we would go down and see my attorney. He says, "Oh, you have got an attorney in the matter." I said, "I have counseled with one in regard to the matter."' Whereupon plaintiff was asked: 'What did Mr. Dodge say about your injury, and what did Mr. Dodge say about the release?' to which the objection was made, in addition to the other objections, that this was a declaration made by the agent long after the injury, which objection was overruled, and defendant took its exception, and plaintiff was directed to proceed with his testimony, whereupon he testified: 'He asked me to sign it, and I told him I

would not. He says: "Well, the company has been good to you; they have been carrying you quite a while." I says: "Yes, sir; the company has been carrying me quite a while, but look what the company has done to me." ' To which the defendant then and there objected, because the declarations of plaintiff were self-serving, which objection was by the court overruled, and defendant took its exception, and the plaintiff proceeded to testify: 'He says, "You don't want to be a damned hog about it?" ' To which the plaintiff says he replied: ' "No; I don't want to be a hog, but I don't think it would be fair to do it." I said, "I don't want to do it." ' And the plaintiff then testified with respect to the second time; and he testified that the effort to secure the release the second time was in the office of the company. He said: 'I would go out there to get my money; that is where they would pay me, and pay days was 1st and 15th, but they would make it 3d and 17th, two days over;' and thereupon the defendant stated, through its counsel: 'Now, your honor, understand to this second conversation we have the same objection and same exception for the same reasons.' To which the court replied, 'Yes, sir.' And thereupon plaintiff was directed by his counsel to 'go ahead.' Whereupon plaintiff testified: 'Well, I went out there and went to the window where I got my money, and they said: "We will be ready for you directly." They were in the back room; the lady went and told them I was there; they said they would be ready in a minute; they were back in there. After a while one of them came to the door and said: "Have a seat, Mr. Strange." I sat down out there on the stairway; I sat down there, and one of them came to the door directly and said, "Come back here in this room." They opened the door and I went in, and there was two men in there, and when I went in they shut the door and put what they call the night lock on. It locked the door, and had me back there with those two men, and one of them said: "Mr Strange, we have a little document here we want you to sign." I said: "What is it, in the form of a release?" "Well, I reckon you might say it was; yes." I said: "Well, I won't sign it." He says: "But you don't know whether you will or not; read it and see whether you will or not." I said, "All right." I read it over and just laid it back on the table and said, "I won't sign it," and he said, "Well, we have got some money here for you if you will sign it." Had something in an envelope; sounded like gold. They said, "We have got some money." Well, the release said, "For ten dollars I hereby release the Texas Company for all damages that have occurred," and so on; that was the substance of it. Well, I saw for the consideration of $10 I released the Texas Company if I signed that, and I wouldn't sign it. They said: "Why not? Give a reason." I just set my crutch out this way, and I says: "You see what you have put me on; the Texas Company has put me on crutches." I says: "For me to turn you loose from any help to live, me and my family." ' Whereupon counsel for the defendant said, 'Now'— and plaintiff said, 'Excuse me, I will take that back,' and the plaintiff thereupon proceeded: ' "For me to live; I cannot sign it; I won't sign it; and I want you to let me out of here"—and they unlocked the door.' And thereupon plaintiff was asked by his counsel: 'Well, did you get any more money after by grace?' and plaintiff replied: 'No, sir; they did not pay me that; that was the payment they didn't pay me.' To all of which testimony the defendant then and there duly objected, which objections were by the court overruled, and the said testimony admitted in evidence before the jury trying the same, and the exceptions of defendant thereto duly taken, as will more fully appear by defendant's bill of exception No. 1."

The objections to this testimony should have been sustained. It shows an endeavor to secure a compromise of the damages claimed. The courts have uniformly held that offers of compromise and peaceful propositions to settle pecuniary differences between parties are encouraged by the law, and when such efforts fail of consummation the negotiations cannot be inquired into in the litigation of the controversy. Greenleaf on Ev. § 192; Railway Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515; Railway Co. v. Kern, 100 S. W. 971; Darby v. Roberts, 3 Tex. Civ. App. 427, 22 S. W. 529. Numerous other authorities might be cited, but these will suffice.

In Railway Co. v. Kern, supra, in passing upon the admission in evidence of a letter, this court said: "This policy of the law favors such settlements and protects negotiations made in good faith for that purpose. It is true the letter does not expressly propose a compromise and settlement of the claim, but such, we think, is the clear import and significance of its words; and, if this interpretation is correct, it was clearly inadmissible upon clearly established legal principles."

[3] The second assignment of error complains of the admission, over objections, of certain questions of counsel and answers of plaintiff, as follows: "Why do you work?" To which the plaintiff answered: "Because I have to." To which the defendant objected, and the objection was by the court overruled, and the defendant took its exception, and thereupon plaintiff was again asked by his counsel: "Yes; if it gives you pain, why do you work?" To which the plaintiff replied: "I have to." To which testimony the defendant objected, because the plaintiff's financial condition cannot be an issue, and this testimony would only go to facts tending to show his financial condition, and tending to show his poverty, which objections

were by the court overruled, and the plaintiff was again asked by his counsel: "Why, then, did you make an effort to work, which gave you pain; why did you work?" To which the plaintiff replied: "Well, as I stated at first, because I have to; I have no other means of living. I have a family to support, and I have no other means." And thereupon the defendant took its exception to this testimony, and moved the court to strike it out, upon which motion the court struck out from the jury the plaintiff's necessity, condition, and that he had a family to support, but left in the testimony that he had to work, to all of which the defendant then and there took its exception, as will more fully appear by bill of exception No. 3.

The appellant submits that this was an "immaterial inquiry, and evidence showing, or tending to show, his impoverished condition is injurious." This was improper evidence, as it was parading before the jury plaintiff's financial condition, and is objectionable; but this standing alone might not be sufficient to reverse the case. However, as it will be reversed on other grounds, we call attention to it that it may not be repeated on another trial.

[4; 5] The third and fourth assignments will be considered together. The third complains of the admission of the answer of F. P. Dodge to the twelfth interrogatory propounded by plaintiff, to the effect if he did not say to plaintiff at his house, after the injury: "You need not worry about your job. The company is to blame for your injury, and they will take care of you." To which he answered, in effect, in the negative. This was objected to, on the ground that it was an admission against the interest of the defendant, it not being within the scope of Dodge's authority, and, if offered for the purpose of impeaching the witness, it was a collateral issue. The fourth relates to the admission of plaintiff's statement while on the witness stand, when testifying about Dodge trying to get from him a release, and to his stating it was the fault of the defendant, which testimony was that Dodge stated to him: "Don't worry about the job. It was our fault that you got hurt, and we will take care of him; don't you never worry about our taking care of him." Dodge, at the time, addressed himself to plaintiff's daughter, who came in about that time. The objection, in substance, was that it was a collateral issue upon which the witness could not be impeached, and not made within the scope of his authority and inadmissible.

The testimony was collateral to the main issue, and was not subject to impeachment. Kirk v. State, 48 Tex. Cr. R. 624, 89 S. W. 1067; Power Co. v. Forwood (Ky.) 113 S. W. 112. The statement of Dodge, being subsequent to the injury and not while the transaction was pending, and a mere opinion, was not binding on the appellant, therefore illegal, and should not have been admitted. Railway Co. v. Sherwood Thompson & Co., 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643; City of Austin v. Forbis, 99 Tex. 234, 89 S. W. 405.

[6] The court refused special charge No. 3, asked by the appellant, which is assigned as error, which charge reads: "You are instructed that, if you believe from the evidence that the scaffold in question was defective, and that the plaintiff had knowledge thereof, and that it was dangerous for plaintiff to continue to work thereon, and plaintiff had knowledge of said danger, and, although you further believe from said evidence that plaintiff called for a carpenter to repair said defect, and that before it could be repaired or strengthened the scaffold fell, yet, nevertheless. if you believe that plaintiff had time to and could have avoided said danger by getting off said scaffold, and that an ordinarily prudent man in the exercise of ordinary care would not have remained thereon, you must find a verdict for the defendant."

In view of the evidence this charge should have been given. It applies the law to the facts in a specific and pointed way, which called the attention of the jury to this particular defense. The court charged on this issue, but did not group the facts and apply the law thereto as fully as presented in the special charge. Railway Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058.

[7] Appellant insists that we erred in our opinion on the former appeal in holding, and have presented quite an array of authorities to support their contention, that the duty of the appellant in furnishing appellee a safe scaffold on which to work was delegable; and having had the same built by other employés, who were fellow servants, appellant is not liable. We have carefully reconsidered the proposition that the evidence warrants the jury's verdict that it was the duty of appellant to furnish the appellee a reasonably safe scaffold on which to work, which duty was nondelegable, and adhere to our former opinion. The duty being nondelegable, the charges requested, relating to the doctrine of fellow servants, do not apply.

For the reasons stated, the judgment is reversed and cause remanded.