HOUSTON EAST & WEST TEXAS RY. CO.
v. INMAN, AKERS & INMAN.

(Court of Civil Appeals of Texas.  Jan. 12, 1911.  Rehearing Denied Feb. 2, 1911.)

1. CARRIERS (§ 180*)—LOSS OF GOODS—CONNECTING CARRIERS—BILL OF LADING—LIMITATIONS TO CARRIER'S OWN LINE—HEPBURN COMMERCE ACT—"STATE."

Act Cong. June 29, 1906, c. 3591, § 7, 34 Stat. 595 (U. S. Comp. St. Supp. 1909, p. 1166), amending Hepburn Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), provides that any common carrier receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any connecting carrier, to which the property may be delivered, or over whose line or lines the property may pass, and that no contract, rule, receipt, or regulation shall exempt any such carrier from the liability so imposed. Held, that the word "state" was used in such provision in its limited sense to represent and include only the states of the federal Union, and that such section had no application to a shipment of cotton from a point in Texas to a foreign country.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 180.*

For other definitions, see Words and Phrases, vol. 7, pp. 6628–6633, 6640; vol. 8, p. 7804.]

2. CARRIERS (§ 180*)—LIMITED LIABILITY—STATE STATUTES—APPLICATION.

A state statute restricting the right of a common carrier to limit its liability has no application to a shipment from a point within the state to a foreign country.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 180.*]

3. CARRIERS (§ 180*)—ACTING CARRIERS—LIMITED LIABILITY—FOREIGN SHIPMENT.

Where an initial carrier accepted a shipment of cotton for transportation from a point in Texas to Bremen, Germany, it was entitled to limit its liability to loss or damage occurring on its own line.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 180.*]

4. TRIAL (§ 89*)—RECEPTION OF EVIDENCE—HEARSAY—MOTION TO STRIKE.

Where testimony given by a witness on direct examination was shown to be hearsay on cross-examination, it was subject to a motion to strike.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 228–234; Dec. Dig. § 89.*]

Appeal from District Court, Harris County; W. P. Hamblen, Judge.

Action by Inman, Akers & Inman against the Houston East & West Texas Railway

Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, Lane, Wolters & Storey, and Wm. A. Vinson, for appellant. Hunt, Myer & Townes, for appellees.

PLEASANTS, C. J. This suit was brought by appellees against appellant to recover the value of 42 bales of cotton, a part of a shipment of 100 bales, alleged to have been delivered to appellant at Nacogdoches, Tex., for shipment to Bremen, Germany, and to have been lost or converted by appellant. The petition alleges that "the said defendant, Houston East & West Texas Railway Company, received from Herman Loeb 100 bales of cotton marked and numbered 'F. T. W.,' and agreed that it and its connections would transport the same from the town of Nacogdoches, Tex., the point of receipt, to the port of Galveston, Tex., and there deliver, lighter, ferry, or cart, at owner's risk, to the Elder Dempster Line, or some other steamship or steamship company, to be therein transported to the port of Bremen, Germany, and to be there delivered to order or assigns, notify Inman, Akers & Inman." It was further alleged that the bill of lading, in due course of business, for a valuable consideration, was indorsed and delivered by Herman Loeb to the plaintiffs, and that defendant failed to deliver 42 bales of said cotton to the Elder Dempster Line, or any other steamship or steamship company at Galveston, but converted the same to its own use, the value thereof being placed at $2,430.98. By its answer appellant admitted the receipt from Herman Loeb at Nacogdoches, Tex., of 100 bales of cotton, marked "F. T. W.," for transportation over its line, and that of connecting carriers, to the port of Bremen, Germany, but alleged that it had no line of railroad to Galveston, Tex., its southern terminal being at Houston; that it seasonably delivered to the Direct Navigation Company, a connecting carrier at Houston, Tex., the identical cotton which had been delivered to it by Herman Loeb at Nacogdoches; and further alleged that, as shown by the bill of lading, the shipment was a foreign shipment, and that the bill of lading contained the following stipulation: "In consideration of the rate of freight herein named, it is hereby stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written, herein contained, and said conditions are hereby agreed to by the shipper, and by him accepted for himself and his assigns as just and reasonable. * * * It is agreed: (3) No carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route, nor after said property is ready for delivery to the next carrier, or to the consignee. * * * And finally, in accepting this bill of lading, the shipper, owner, and consignee of the goods, and the holder of the bill of lading, agree to be bound by all of its stipulations, exceptions, and conditions, whether written or printed, as fully as if they were all signed by such shipper, owner, consignee, or holder." Appellant alleged that the foregoing stipulation was valid and binding upon the plaintiffs, and that it, having delivered said cotton to its connecting carrier at Houston, Tex., was not liable to the plaintiffs for any negligence or default of any connecting carrier. The trial in the court below was with a jury. After the evidence was in the trial judge instructed the jury to return a verdict in favor of the plaintiffs for the value of the cotton. In obedience to this instruction a verdict was rendered in favor of plaintiffs for the sum of $2,453.35, and judgment was rendered accordingly.

The evidence shows that the defendant received the cotton for shipment, and issued the bill of lading as alleged in the petition. This bill of lading contained the clause restricting appellant's liability to loss or damage occurring on its own line, as set but in defendant's answer. There was evidence showing that 98 bales of the cotton was promptly and safely carried by appellant to Houston, Tex., the terminus of its line of railroad, and was there delivered to its connecting carrier, the Direct Navigation Company. Upon this state of the evidence the trial court erred in instructing the jury to return a verdict in favor of the plaintiffs.

This instruction was based upon the conclusion of the learned trial judge that the act of Congress of June 29, 1906, c. 3591, § 7, 34 Stat. 595 (U. S. Comp. St. Supp. 1909, p. 1166), known as the Carmack amendment to Hepburn Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (Comp. St. 1901, p. 3169), was applicable to the facts of this case. That amendment is as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." This language is clear and unambiguous, and the prohibition against the right of a connecting carrier to limit its liability to loss or damage occurring on its own line is only applicable when the shipment is from "a point in one state to a point in another state." The use of this

language excludes the idea that Congress intended to prohibit such contracts when the shipment was to a foreign country.

The word "state," as used in the Constitution of the United States, has been uniformly construed to mean a constituent member or part of the federal Union having an independent local governmental organization, but as used in the statutes and treaties of the United States it has been construed to include territories of the United States, and also foreign countries or states when such construction is required by the context of the act or instrument, and is necessary to effectuate its evident purpose. Hepburn v. Elzey, 6 U. S. 445, 2 L. Ed. 332; Downes v. Bidwell, 182 U. S. 244, 21 Sup. Ct. 770, 45 L. Ed. 1088; Talbott v. Silver Bow, 139 U. S. 438, 11 Sup. Ct. 594, 35 L. Ed. 210; De Geofrey v. Riggs, 133 U. S. 258, 10 Sup. Ct. 295, 33 L. Ed. 642; Eidman v. Martinez, 184 U. S. 578, 22 Sup. Ct. 515, 46 L. Ed. 697; Terry v. Olcott, 4 Conn. 442; Insurance Co. v. Insurance Commissioners, 64 Mich. 614, 31 N. W. 542.

We think it is clear from an examination of the entire act that the word "state," as used in the amendment in question, was used in its limited constitutional sense, and was intended to mean a state of the federal Union. Other portions of the act are expressly made applicable to shipments from "any state or territory or the District of Columbia to any other state, territory or District of Columbia, or to any foreign country," showing that Congress did not understand or intend that the word "state," as used in the amendment, should include a foreign state or country, as well as a state of the Union.

A valid reason for the failure of the amendment to include foreign shipments within its provisions is not far to seek. The rule which forbids a common carrier to contract against liability for loss or damage caused by its connecting carrier for which it is in no way responsible is an arbitrary one, and can only be upheld upon the grounds of public necessity, and it is entirely reasonable to conclude that Congress did not deem it wise to extend this rule so as to make the domestic carrier liable for loss occasioned by the negligence of a foreign steamship company or other foreign carrier, because the right of the domestic carrier to be reimbursed for any amount paid by it by reason of the default of a connecting carrier would be much more difficult of enforcement against a foreign carrier than it would if the shipment was merely interstate.

The shipment in question being one to a foreign country neither the act of Congress above quoted, nor the statute of this state restricting the right of the carrier to limit its liability, has any application, and, under the well-settled rule of decision in this state, the limitation contained in the bill of lading is a valid and binding contract, and appellant was entitled to a verdict if it had in fact delivered the cotton to its connecting carrier, the Direct Navigation Company. Ry. Co. v. Sherwood, 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643; Navigation Co. v. Ins. Co., 89 Tex. 1, 32 S. W. 889, 30 L. R. A. 713, 59 Am. St. Rep. 17; Ry. Co. v. Crossman, 33 S. W. 290.

On the trial of the cause in the lower court Chesley B. Howard, a member of plaintiff's firm, testified by deposition. In answer to a direct interrogatory this witness stated: "Neither my firm, nor any one for my firm, has received the said 42 bales, nor any part thereof." On cross-examination he testified: "I did not personally buy said cotton. My firm bought hundreds of thousands of bales during that cotton season. I am a member of the firm, and thousands of details are left to competent subordinates. My information that we bought the cotton is from the record on our books showing the purchases, the bill of lading showing shipment of same which I personally saw, and the payment of Mr. Loeb's drafts against the cotton and delivery of part of the cotton at Bremen. I was not at Nacogdoches when the cotton was shipped. In stating that my firm received at Bremen only 58 bales of the cotton marked 'F. T. W.' under bill of lading No. 24, I am doing so on information furnished me by my employés. I was not at Nacogdoches when the cotton was shipped, nor in Galveston when it reached there, nor at the wharf in Bremen, Germany, when the ship was unloaded. I was not in Nacogdoches, nor in Galveston, Texas, when the cotton in question moved. I did not see a single bale of the shipment of cotton in question, and probably do not see a thousand bales out of each one hundred thousand which my firm buys and sells."

Defendant objected to the admission in evidence of the statement of the witness that neither his firm nor any one for it had received the cotton in question on the ground that as shown by the testimony of said witness on cross-examination, such statement was hearsay. It having been clearly shown by the statements of the witness on cross-examination that the testimony objected to was hearsay, it was not admissible when objected to on that ground by the defendant.

The case having been tried on the theory that the limitation in the bill of lading relied on by the defendant was invalid, we cannot presume that the evidence upon the issue of whether the cotton was all delivered to the Direct Navigation Company was fully developed, and therefore cannot properly render a judgment for the defendant.

Because of the errors before pointed out the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.