AUGUSTA S. R. CO. v. WRIGHTSVILLE & T. R. CO.

(Circuit Court, S. D. Georgia, N. D. April 18, 1896.)

1. INTERSTATE COMMERCE ROAD WHOLLY IN ONE STATE.
　　The fact that a railroad lies wholly within one state does not exempt it from the obligations imposed by the interstate commerce act, if the transportation over it is part of a shipment from one state to another, or to or from a foreign country.

2. SAME—UNLAWFUL DISCRIMINATION.
　　The A. Railway connected at T. with the C. Railway and the W. Railway. Both the A. and C. Railways were engaged in interstate commerce, reaching by their own lines and connections the same regions. By the W. Railway, they both made connections with other important railways, and with routes of water transportation. For a considerable time, the W. Railway charged the same rate for transportation over its line of freight received from or destined to either of the other railways; but in December, 1895, it withdrew these rates as to the A. Railway, and thereafter charged for transportation, over its line, of freight received from or destined to the A. Railway, the full local rate of freight allowed by statute, which was considerably higher than the rate previously charged to both railways, and still charged to the C. Railway. There had been no change of conditions, and the service rendered to both railways continued to be substantially the same. Held, that the charge of such increased rate was an unlawful discrimination, not justified because the rate charged was the statutory local rate, and the transportation over the W. Railway was

wholly within the state, nor by the facts that the A. Railway was a small and weak road, whose business was unimportant as compared with that of the C. Railway, or that there was no direct connection between the tracks of the A. and W. roads, the tracks of the C. Railway being used for switching, it not appearing that the C. Railway objected to such use of its tracks; and, accordingly. that the W. Railway should be enjoined from exacting more from the A. Railway than from the C. Railway, for similar services.

## Application for mandamus under section 10, Interstate Commerce Act March 2, 1889.

The *Augusta Southern Railroad Company* has instituted a proceeding against the Wrightsville & Tennille Railroad Company to obtain relief for an alleged violation of the law relating to interstate commerce. The wrong alleged is committed, it is charged, by means of discrimination against the complainant in the matter of freight charges on interstate shipments. These are both corporations created by the state of Georgia. The Augusta Southern extends 85 miles from Augusta to Tennille, at which point it has a connection with the Wrightsville & Tennille Railroad, and also with the Central of Georgia Railway Company. These roads are all of the standard gauge. They are each engaged in the continuous carriage of freight to and from points in the state of South Carolina and in the state of Georgia. The Augusta Southern, connecting at Augusta with several railroads which traverse the Carolinas, approaches Tennille from the northeast. The Wrightsville & Tennille, connecting, as already stated, at Tennille with the Augusta Southern and the Central, extends for 36 miles in a southerly direction to Dublin, on the Oconee river. There it may deliver freight to the steamboats plying on that navigable stream, and by the Macon & Dublin Railroad it may attain the network of railways which center in Macon. The complainant charges that the Wrightsville & Tennille Railroad has adopted the policy of charging, on all interstate freights which were tendered to it by the Augusta Southern, $2.76 for 36 miles per ton carriage. On similar shipments offered by the Central, and for the same services, it charges $2.40 per ton. This, it is stated, gives an undue and unreasonable preference and advantage to the Central, which enables it to deprive the Augusta Southern of large shipments of interstate freight destined for points south of Tennille, and also of large shipments of through freight from such points, and especially from Dublin and Macon, consigned to Charleston and Port Royal, S. C., and numerous other points beyond the boundaries of Georgia. The Central Railway connects with the railways of South Carolina at Savannah. It also has a connection with them at Augusta. It is a competing and rival line with the Augusta Southern, but it is alleged that the unfair and unreasonable discrimination complained of in favor of the Central gives to it an undue advantage, and causes to the Augusta Southern large losses of freight and corresponding diminution of revenues on interstate shipments of cotton, guano, salt, and other natural and manufactured products. Prior to December 24, 1895, a system of percentages on interstate freights had been in force between the Augusta Southern and the Wrightsville & Tennille, by means of which it might compete for this business; but on that day an order was issued by the latter company withdrawing this agreement as to interstate business. A copy of this order is attached. It is signed by the president and the general freight agent, and it is a withdrawal of percentages on through rates between all points from Boston, Mass., to Hawkinsville, Ga., inclusive. This rupture of traffic arrangement in interstate commerce was done, the bill charges, for the purpose of injuring the business of the Augusta Southern, and, indeed, inflicts upon it irreparable injury. By an amendment to the bill, it is alleged that the Central owns a large majority of the stock of the Wrightsville & Tennille Railroad, and dominates its policy, and that this is contrary to paragraph 4 of section 2 of article 4 of the constitution of the state of Georgia. The prayers of complainant are that a mandatory injunction shall issue against the Wrightsville & Tennille Railroad, restraining it and its officers from refusing proper interstate freight and traffic facilities, and commanding it to receive all such interstate freight and traffic

tendered at Dublin and at Tennille, Ga., by or for the Augusta Southern, and to transport and move the same upon the same reasonable rates' and conditions upon which the freights of the Central are moved, and to cease its discrimination. Pending the hearing, the complainant seeks an order of mandamus to compel the defendant to transport the freights offered; and proffers its willingness to give adequate security for the sum of the difference between $2.40 and $2.76 per ton on all interstate freights in case it shall be finally determined that the discriminating rates of the Wrightsville & Tennille is warranted by the law.

The answer of the defendant denies that there is a physical connection of its track at Tennille with the track of the complainant, but states that the tracks of the Central afford the connection, and that cars must be transported on the tracks of the latter about 300 yards before the cars can be interchanged. It denies that it is engaged in the transportation of passengers and freights, so as to be amenable to the interstate commerce law, but is merely a local road, and only engages in interstate commerce as a local connecting line, which may be used under special contract with other roads which are so engaged. In the absence of such special contract, it has the right to, charge the full local rate established by the state law. It admits that it refused to receive the cars of interstate freight tendered by complainant, because these cars contained freight consigned to points on the Oconee river on through bills of lading and division of freight charges less than its local rate. The answer admits that it received and forwarded freight for the Central of Georgia Railway Company at less than the rates charged complainant, but this was by a special and advantageous contract; that the Central is a railroad much more powerful and extensive than the Augusta Southern; and that the latter has not equivalent facilities for handling interstate freights; and that shippers have complained of the delay in freights shipped by the Augusta Southern, and this has annoyed respondent and its customers. It denies that the Central of Georgia controls its policy, although it has, it admits, a majority of its stock; but since the reorganization of the Central this stock has not been transferred on the books, and it does not know who now owns the stock formerly controlled by the Central. It is itself an independent road, and its preference of the Central in the matter of interstate business is based on business and economic principles, for its own interest, and is not a discrimination against the Augusta Southern. It denies that its refusal to accord to the freight of the Augusta Southern the same rates upon which it accepts the same character of freights from the Central is a violation of the interstate commerce law; further, that, complainant's road being wholly in the state of Georgia, it cannot assume to be a competitor for interstate traffic, nor can it maintain any complaint against respondent for its refusal to accept its through bills of lading and joint rates. Moreover, the revenues, net and gross, of complainant's road are small. It can afford respondent but little business as compared with that delivered by the Central, and, for these and the other reasons before stated, the respondent justifies, to its apparent satisfaction, its disinclination to enter into joint traffic with the Augusta Southern, and prays to be discharged with its reasonable costs.

Leonard Phinizy, for plaintiff.
A. F. Daley, for respondent.

Before PARDEE, Circuit Judge, and SPEER, District Judge.

SPEER, District Judge (after stating the facts). The application of the complainant has been submitted upon the verified statements of the petition, presented in the form of a bill in equity, and the answer of the respondent. We have, upon consideration, treated the petition as an application for mandamus, under section 10 of the act of congress of March 2, 1889, relating to interstate commerce, and the answer of the respondent has been regarded as an affidavit. In the

foregoing statement of the issues, we have, we think, presented the material averments on either side of the controversy; and it will be perceived that there is little, if any, conflict between the parties as to the facts. It is undisputed that prior to the 24th day of December, 1895, the Wrightsville & Tennille Railroad had a contract or traffic arrangement of freights in the interstate commerce of a large section of the country. On that day this contract was ruptured. This was done by an official order, so comprehensive in its scope that it will be best understood by presenting it verbatim:

Wrightsville and Tennille Railroad Company. GWP—Verb. W. & T. No. 673.—Traffic Department. Effective December 24, 1895.—Tennille, Ga., December 19, 1895.—Withdrawing Percentages via Augusta Southern Railroad.

To Agents and Connections: Please refer to the following percentage sheets in connection with the Augusta Southern Railroad, and be advised that, effective Dec. 24, 1895, they are hereby withdrawn:

W. & T. No. 479, Nov. 20, 1893. Between Hawkinsville, Ga., and stations R. & D. R. R. (Second division.)

W. & T. No. 480, Nov. 20, 1893. Between Hawkinsville, Ga., and Richmond, Manchester, Lynchburg, West Point, Petersburg, and Norfolk, Va.

W. & T. No. 481, Nov. 21, 1893. Between Hawkinsville, Ga., Norfolk and Portsmouth, Va. (Via R. & D.)

W. & T. No. 482, Nov. 21, 1893. Between Hawkinsville, Ga., and Boston, Providence, New York, Philadelphia, and Baltimore. (Via Atlantic Coast line.)

W. & T. No. 483, Nov. 21, 1893. Between Hawkinsville, Ga., and Boston, Providence, New York, Philadelphia, and Baltimore. (Via steamer and R. & D. R. R.)

W. & T. No. 508, Dec. 25, 1893. Between Hawkinsville, Ga., and Norfolk and Portsmouth, Va. (Via S. A. line.)

W. & T. No. 557, Jan. 31, 1894. Between Augusta, Empire, and Hawkinsville, Ga.

W. & T. No. 579, Feb. 13, 1894. Between Empire, Ga., Charleston and Port Royal, S. C.

W. & T. No. 589, March 29, 1894. Between Hawkinsville, Ga., and Boston, Providence, New York, Philadelphia, and Baltimore. (Via steamer and S. A. line.)

W. & T. No. 590, March 28, 1894. Between Hawkinsville, Ga., Dublin, Ga., and Charleston, S. C. (Via S. C. & Ga. Ry.)

W. & T. No. 628, April 15, 1894. Between Hawkinsville, Ga., Dublin, Ga., and Port Royal, S. C. (Via P. R. & A. Ry.)

G. W. Perkins, Pres. and Supt.
F. H. Roberson, Gen. Frt. Agt.

M V M-FWS-JHD-WAW-WHT-TME-WJC-CRC-LAE-RHW-AGT. Ten'l. 2-Dub 1 (20).

File A-261.

This manifesto is as far-reaching as it is broad in effect. Before it was issued, freights brought into Georgia at Augusta from phosphate mines or other industries of the Carolinas, from the commercial marts and centers of manufacture of the other Atlantic states, might have been distributed to the people by either of two routes,— the Central or the Wrightsville & Tennille. Shipments via the Augusta Southern, transported by the Wrightsville & Tennille, might be delivered to the steamboats which ply on the Oconee, the Ocmulgee, and the Altamaha, and bear the manufactured necessities of civilized life to Doctortown and Silver Bluff, to Red Bluff and Poor Robin. Delivered to Macon and Dublin at the latter city, the cars

might be transported on a new and valuable all-rail route to Macon itself. Hawkinsville might readily be reached by the river, and a large, fertile, and rapidly developing section of Georgia might have the advantage of competing lines of road. The Augusta Southern itself might be permitted to live. But the rates and percentages theretofore accorded to the Augusta Southern were withdrawn. It is true that the Wrightsville & Tennille did not refuse to move the cars of interstate freight tendered it by the Augusta Southern, provided that road would pay 36 cents per ton more than it had ever before exacted. It does not appear from the record why the extraordinary demand was made. Every condition and suggestion advanced in the respondent's answer existed when the previous arrangement as to interchange freight was of force. The Wrightsville & Tennille switches the cars at the junction for the Central and for the Augusta Southern. The service is similar. With rigid impartiality, it charges each road one dollar per car for this service. The cars of each are moved 36 miles. Indeed, there seems to be, so far as we are informed, no difference at all in the service rendered the two roads. Why, then, should the Wrightsville & Tennille charge the Augusta Southern $2.75 per ton for a haul of 36 miles, and the Central only $2.40? It is said in the answer of the Wrightsville & Tennille that the Central is a larger and more powerful road than the Augusta Southern; but the interstate commerce law does not authorize discrimination in favor of a larger road or a better customer. The Wrightsville & Tennille insists that it does not connect with the Augusta Southern, for the right of way of the Central is between them. But it has no more connection with the Central, and the Central is not objecting to the use of its right of way, and magnanimously, so far as the record discloses, gives the same advantage to either road. Now, if the Central had any control over the Wrightsville & Tennille Railroad, a different question might be presented; but the answer assures us that the Wrightsville & Tennille is a strictly independent road, and is controlled by its own directors.

But it is insisted for the Wrightsville & Tennille Railroad that it is a local road, wholly within the state, as is the Augusta Southern, and therefore neither is within the operation of the law relating to interstate commerce. But the authorities cited by the respondent conclusively dispose of this contention. What seems to be a very adequate statement of the law on this point is afforded by the interstate commerce commission itself in the case of Mattingly v. Pennsylvania Co., 3 Interst. Commerce Com. R. 609, 610:

"What is meant by transportation wholly within one state? The answer seems plain. It is evidently the transportation that is an element of the commerce not subject to the jurisdiction of congress; that is to say, the purely internal commerce of a state. Under this principle, transportation to which the act does not apply must originate and end in the state. If the transportation be a part of a voyage from one state to another, or if a shipment to or from a foreign country, it is interstate or foreign commerce, and subject to the act; and, under the rule that commerce includes all the agencies employed in it when a carrier located and operated only within one state engages in interstate transportation, it becomes an instrument of commerce among the states, and is subject for all the purposes of said commerce to the provisions of the act. It cannot engage in the service, and reject the obli-

gations imposed for the regulation of the service. One of these obligations founded on the public interests is impartiality in receiving, shipping, forwarding, and delivering interstate traffic. There can be no preferential service in this respect as regards persons, carriers, or traffic, and no refusal to do for some what is done for others, nor any unjust discrimination in charges."

Applying this principle to the facts of this case, it is indisputable that both the Wrightsville & Tennille and the Augusta Southern have been, and are, engaged in interstate commerce, and are under the control of the enactments upon that topic.

It is also said for the respondent that the court cannot compel it to enter into a contract for through shipments with the complainant, and many cases are cited to support that proposition. Conceding this to be true, we nevertheless have, it seems, the power to compel the respondent to receive and forward the freights tendered at its terminus by the Augusta Southern, and to inhibit it from charging for such service rates so unreasonable as to prohibit the shipments of interstate freights by the complainant's road; thus compelling all such freights to be shipped over the road in whose favor the discrimination is made. The through bill of lading is a facility, but is not a necessity, for such interchange of freights. Nor does it follow, as insisted for the respondent, that the full local rate permitted by the state law is, in the absence of a contract between the roads for through shipment, a just or reasonable rate on freight plainly not local, but through freight. Why is it reasonable that a railroad company should charge a higher rate for local than for through shipments?

In King v. Railroad Co., 4 Interst. Commerce Com. R. 262, we find this clear proposition:

"The local rates are made for many trains that run slow, stop generally at every station, delivering and taking on freight, chiefly in parcels not loaded or unloaded by the shippers or consignees, but loaded or unloaded by the servants of the company. They, of course, carry freight occasionally in car loads to local points. Such shipments are, of course, much more expensive than through freights, and for such services an additional charge is reasonable, and the laws permit it."

But no fair or equitable construction will justify the exaction of local rates for freights not local, where services belonging to local rates is not offered; and this for the purpose of diverting traffic or stifling a competitor. The application of local freight rates as instrumentalities of warfare between railroads as to interstate or foreign through freights unless such rates are actually reasonable for the services rendered, is clearly under the ban of the national law.

Is the rate of $2.76 a ton on freight in itself not local, but through freight, per se unreasonable? As we are now informed, we think it is. The independent, well-managed, and prosperous respondent charges the Central $2.40 for services which seem precisely similar in character to those rendered the complainant; and it formerly charged the complainant the same rate. The conditions of the traffic remaining unchanged, this is, at least, presumptive evidence that $2.40 is enough; and, if it is, $2.76 is unreasonable. For the purposes of this application, then, we find a charge of $2.76 a ton on interstate freights shipped under conditions similar to those where

the Central is charged $2.40 a ton to be an unreasonable and unlawful discrimination. We find that the respondent should be inhibited under such circumstances from exacting on such shipments more than it exacts from the Central for similar services. We also direct that the Wrightsville & Tennille Railroad, when this rate is paid or tendered by the Augusta Southern, shall, without unnecessary delay, forward and deliver such shipments of interstate freights to their destination, and shall afford equal and fair facilities for the interchange of interstate business. We further find that the Augusta Southern shall give bond with security, to be approved by a judge of this court, in the sum of $10,000, to secure the Wrightsville & Tennille for the difference between the rates of $2.40 and $2.76 per ton on interstate shipments in case it should be hereafter ascertained that such a discrepancy is not unlawful discrimination, and that both parties shall prepare the cause for final disposition as speedily as may be practicable; and that a mandamus be issued and served conformably to this finding, under the provisions of section 10 of the act of March 2, 1889.