INTERSTATE COMMERCE COMMISSION v. BELLAIRE, Z. & C. RY. CO.

(Circuit Court, S. D. Ohio, E. D. January 11, 1897.)

INTERSTATE COMMERCE LAW—INTERSTATE CARRIERS.

A railroad company whose line is wholly within a single state, and which, although it carries freight destined to points beyond such state, never issues bills of lading to points beyond its own line, receives no freight on through bills of lading, and has no arrangement with other roads for a conventional division of charges, or for a common control or management, is not within the purview of the interstate commerce act or of the supplemental act of August 7, 1888. Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 16 Sup. Ct. 700, 162 U. S. 184, distinguished.

Application for a Writ of Mandamus.

Harlan Cleveland, U. S. Dist. Atty., for complainant.
Wm. F. Hunter, for respondent.

SAGE, District Judge (orally). This case is before the court on the question of the taxation of costs against the defendant company, which, having failed to make a report to the interstate commerce commission, under section 6 of the supplementary act of August 7, 1888, was required, under an alternative writ of mandamus, to make such report, or show cause why it did not do so. A report was thereupon filed by the company, which is a copy of the report which the company annually makes to the commissioner of railroads and telegraphs of the state of Ohio. The proceeding in mandamus was thereupon dismissed, and the question of costs remains to be disposed of. If the defendant company is within the purview of section 6 of the supplemental act, its excuse for having failed to make report is insufficient. The contention is that the company is not subject to the interstate commerce act. Its line extends from Zanesville to Bellaire. It appears from the testimony of the receiver of the road and its auditor that, although a common carrier of freight, including freight marked and destined to points beyond its terminus, and in many cases to points beyond

the state lines of Ohio, it never issues a bill of lading to any point beyond its own lines. Upon the bill of lading the marks upon the freight, the name of the consignee, and the destination, appear, but the bill of lading itself is always limited to the line of the company's road. It also appears that its charges upon freight destined for points beyond its own terminus are paid as advance charges in many instances by the railroad company which takes the freight to its final destination.

Further, it appears that the company receives no freight under through bills of lading; that is to say, if freight comes from another carrier destined to a point on its own line, it invariably issues its own bill of lading, and refuses to receive such freight upon any through bill issued by another company, although it pays advance charges when necessary, and collects them from the consignee.

The case of Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, is cited by the United States district attorney in support of his claim that the road is subject to the provisions of the act. But in that case the goods were shipped from Cincinnati, Ohio, to Social Circle, Ga., on a through bill of lading, and it was held that, upon the facts, the company upon whose line the village of Social Circle was located had subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the act. Here the opposite fact appears. Judge Shiras, in announcing the opinion of the court, said, on page 193, 162 U. S., and page 704, 16 Sup. Ct.:

"All we wish to be understood to hold is that, when goods shipped under a through bill of lading, from a point in one state to a point in another, are received in transit by a state common carrier, under a conventional division of the charges, such carrier must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment, within the meaning of the act to regulate commerce."

Here there was neither a through bill of lading nor a conventional division of charges. Judge Shiras, continuing, said:

"When we speak of a through bill of lading, we are referring to the usual method in use by connecting companies, and must not be understood to imply that a common control, management, or arrangement might not be otherwise manifested."

Such control, management, or arrangement is not, however, otherwise manifested in this case. It appears that the terminus of the defendant company's road is at the Mill Run Junction of the Baltimore & Ohio road, which is about one mile east of the depot of the Baltimore & Ohio road at Zanesville. By arrangement between the defendant company and the Baltimore & Ohio Company, and for compensation, the freight agent and the passenger agent of the Baltimore & Ohio Company acted in that capacity also for the defendant company, and attended to its business; but there is in no sense any community of interest between the companies, nor is there in any instance any arrangement for the continuous carriage of freight, nor for the division of charges.

My opinion, therefore, is that the defendant company is not within the purview of the interstate commerce act, and cannot be com-

pelled to make the report called for. I have no doubt that congress would have the power to amend the act so as to require this and other companies occupying like relations to file reports, inasmuch as they all carry freight destined for points beyond the state in which the road is located. But the act is not so framed as to include the defendant company, and, while it is a proper act of courtesy for the defendant company to furnish annual copies of its report to the state commissioner of railroads and telegraphs, it cannot be forced to make such reports. The provision of the supplemental act is to be strictly construed, for the reason that section 6 enacts that the failure or refusal to make report shall operate as a forfeiture in each case in a sum of not less then $1,000 nor more than $5,000, to be recovered by the attorney general of the United States in the name and for the use and benefit of the United States. The act is therefore penal in its nature. The defendant is not liable for the costs.