PORTER *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

Opinion delivered March 17, 1906.

INTERSTATE COMMERCE—EVASION OF THROUGH RATE.—Although the through rate on freight from a point outside the State to a point within the State is greater than the rate to an intermediate point plus the local rate to the destination of the freight, a shipper can not take advantage of this fact in regard to a consignment which is in fact intended to be a continuous interstate shipment. but which is interrupted inside the State for the sole purpose of evading the interstate rate.

Appeal from Arkansas Circuit Court; *George M. Chapline,* Judge; affirmed.

*John L. Ingram* and *Geo. C. Lewis,* for appellant.

It was not an interstate transaction. There was no arrangement for continuous shipment, no through bill of lading, and on arrival at Brinkley freight charges were paid, and the car delivered to appellant. 162 U. S. 184; 1 Int. St. Com. Rep. 30; 2 *Ib.* 142; 63 Iowa, 732; 26 S. W. 172; 81 Fed. 783; 77 Fed. 942; Judson on Interstate Com. § 114.

*S. H. West* and *Bridges & Wooldridge,* for appellee.

The plan of shipment adopted by appellant was a mere subterfuge to avoid the interstate rate, and apply the local rate fixed by the State Commission, and is in violation of the Interstate Commerce Act, § 7. Appellant could not break up the shipment in order to evade the interstate rate. 44 S. W. 542; 46 Fed. 641; 45 S. W. 814; 184 U. S. 47. A shipment originating at a point in the State, and consigned to another point in the State where the carrier, in order to deliver the same, passes through another State or Territory is an interstate shipment. 187 U. S. 617. An article of interstate commerce ceases to be such, not at the instant when it enters the State, but when the importer has so acted upon it that it has become incorporated and mixed up with the mass of property in the State. 30 Fed. Rep. 867; 82 *Ib.* 422. Where the shipper has selected an unusual method of shipment, differing from the ordinary way, his intent may be shown. 196 U. S. 271-2; Prentice & Egan, on Com. Cl. Fed. Const. 90-93. Being an interstate transaction, appellee could not have charged the rate fixed by the State Railroad Commission without violating the Interstate Commerce Act and subjecting itself to a severe penalty. 46 S. W. 609; 54 Kan. 232; 94 Ga. 775; 63 Mo. App. 145.

McCULLOCH, J. Appellant purchased at Erin, Tennessee, on the Louisville & Nashville Railroad, a carload of lime to be transported to Stuttgart, Arkansas, on the railroad of appellee. He inquired of appellee's agent at Stuttgart as to the freight rate, and was advised that the through rate from Erin to Stuttgart, *via* appellee's road and connecting carriers, would be 22 cents per hundredweight. He also ascertained that the through rate from Erin to Brinkley, Arkansas, was 14 cents, and the local rate from Brinkley to Stuttgart fixed by the Arkansas Railroad Commission over appellee's road was 5 cents, so he caused the carload of lime to be consigned to himself at Brinkley. It was shipped over the Louisville & Nashville Railroad (which extends from Erin to Memphis, Tennessee), and the Choctaw, Oklahoma & Gulf Railroad, which extends westward from Memphis and crosses appellee's road at Brinkley.

Upon arrival of the car of lime at Brinkley, appellant, with-

out unloading or opening the car, paid the freight from Erin to that point and reshipped it over appellee's road to himself at Stuttgart. When the car arrived at Stuttgart, appellant tendered to the agent of appellee 5 cents per hundredweight upon the consignment, which the latter refused to accept and demanded payment of 12½ cents per hundredweight, which would have been its *pro rata* of a through rate.

The question presented to us now is whether appellant had the right, under the circumstances detailed above, to take advantage of the local freight rate from Brinkley to Stuttgart fixed by the Arkansas Railroad Commission, or whether the consignment must be deemed continuous from Erin to Stuttgart, and therefore an interstate commerce transaction. The lower court held that it was interstate commerce, and rendered judgment against appellant at the rate of 8 cents per hundredweight, which, with the rate of 14 cents paid from Erin to Brinkley, made up the through rate of 22 cents from Erin to Stuttgart.

We are not concerned about the correctness of the judgment, inasmuch as appellee does not question it, further than to inquire whether or not it imposed upon appellant a more burdensome freight rate than he was entitled to. There is no dispute about the facts, or that appellant intended to procure continuous transportation of the lime from Erin to Stuttgart, the only question being whether he had the right to take advantage of the situation presented; viz., the interstate rate from Erin to Brinkley and the Railroad Commission rate from Brinkley to Stuttgart, in order to secure a rate through to the latter place at less than the interstate rate fixed between the two points.

In other words, as Erin, Tennessee, was the initial point of consignment, and Stuttgart, Arkansas, was intended as the final destination, did the character of the consignment as an interstate transaction continue until the latter point was reached? The question is by no means free from doubt, and there are few decisions of the courts bearing upon it, but those to which our attention has been directed sustain the ruling of the circuit judge. In *Augusta S. R. Co.* v. *W. & T. R. Co.,* 74 Fed. 522, it was held (quoting from the syllabus) that "the fact that a railroad lies wholly within one State does not exempt it from obligations imposed by the interstate commerce act, if the transportation over

it is part of a shipment from one State to another, or to or from a foreign country." In *Interstate Commerce Com.* v. *Bellaire, Z. & C. Ry. Co.,* 77 Fed. 942, and *United States* v. *Chicago, K. & S. R. Co.,* 81 Fed. 783, it was held that railroads operating wholly within a State, and not participants in a common arrangement for interstate shipments, were not within the terms of the interstate commerce act. There are decisions of the Interstate Commerce Commission to the same effect. *Mo. & Ill. R. T. & L. Co.* v. *Cape Girardeau & S. W. Ry. Co.,* 1 Int. Com. Com. Rep. 30; *New Jersey Fruit Exch.* v. *Central R. Co.,* 2 Int. Com. Com. Rep. 142.

The case of *Cin., N. O. & Tex. Pac. Ry. Co.* v. *Int. Com. Com.,* 162 U. S. 184, is relied on to some extent by both sides here, but we do not find it conclusive of the particular question. There the railroad was operated wholly within the State of Georgia, but carried freight in that instance under a through bill of lading, and under an arrangement with other carriers for continuous shipment from other States. Mr. Justice SHIRAS, speaking for the court, said: "All we wish to be understood to hold is that when the goods shipped under a through bill of lading from a point in one State to a point in another are received in transit by a State common carrier, under a conventional division of the charges, such carrier must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the act to regulate commerce. When we speak of a through bill of lading, we are referring to the usual methods in use by connecting companies, and must not be understood to imply that a common control, management or arrangement might not be otherwise manifested."

In the two cases, *State* v. *Gulf, C. & S. F. Ry. Co.* (Court of Civ. App. Texas), 44 S. W. 542, and *Cutting* v. *Florida Ry. & Nav. Co.,* 46 Fed. 641, the same principle was involved as in the case at bar, and was decided contrary to the contention of the appellant. The only difference between these cases and the case at bar is that in the former the shipper intended to ship freight out of the State, but, in order to take advantage of a lower interstate rate from another point in the State, attempted to ship to that point, and enforce the local rate thereto, and then reship to the intended final destination. The courts, in both the cases

cited, held that it was an interstate transaction from the initial point of shipment, and that the State commission rates could not be enforced. The Texas court, referring to the case of *Houston Direct Nav. Co.* v. *Ins. Co. of North America,* 89 Tex, 1, 32 S. W. 889, said: "We regard that decision as directly in point, and therefore hold that the shipment Long & Company desired to make over appellee's road would have been interstate commerce, and consequently not subject to regulation by the State or its railroad commission." Those two cases are decisive of the question presented in this case, and are supported by sound reason.

A section of the Federal Interstate Commerce act is as follows:

"That it shall be unlawful for any common carrier subject to the provisions of this act to enter into any combination, contract, or agreement, expressed or implied, to prevent, by change of time schedule, carriage in different cars, or by other means or devices, the carriage of freights from being continuous from the place of shipment to the place of destination; and no break of bulk, stoppage, or interruption made by such common carrier shall prevent the carriage of freights from being and being treated as one continuous carriage from the place of shipment to the place of destination, unless such break, stoppage, or interruption was made in good faith for some necessary purpose, and without any intent to avoid or unnecessarily interrupt such continuous carriage, or to evade any of the provisions of this act." 24 Stat. L. 382.

This section clearly prohibits the carrier from doing, either directly or indirectly, what the shipper has attempted to do in this case, and we see no reason why it should not be a protection to the carrier as well as a limitation upon its acts. As we understand them, the Federal statutes providing for the regulation of interstate commerce, as well as the statutes of this State providing for the regulation of intrastate railroad traffic rates, are designed for the protection of shippers, each covering a separate field of operation, the latter yielding to the former where there is possible conflict. The rate fixed under State legislation can not be used to affect or frustrate the rate fixed under the superior power. To permit that would be a regulation of interstate com-

merce by State laws, a power conferred solely by the Constitution upon Congress. *Louisville & N. R. Co.* v. *Eubank,* 184 U. S. 47.

The decisions of the Interstate Commerce Commission hereinbefore cited are not in conflict with the views here stated. In those cases the question presented was one of jurisdiction of the commission to regulate an interstate rate. The question we are dealing with here is whether the State commission rate can be demanded and enforced in favor of the shipper on a consignment which was in fact intended to be a continuous interstate shipment but which has been interrupted inside the State for the sole purpose of evading the interstate rate. We say that it can not be done. The consignment is an interstate transaction, and continues to be such until the final destination is reached.

Affirmed.

RIDDICK, J., not participating.