ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. ALLEN.

Opinion delivered April 12, 1915.

1.  CARRIERS—DEMURRAGE CHARGE—DELAY CAUSED BY CARRIER.—A shipper may recover from a carrier a demurrage charge occasioned by the fault of the carrier.

2. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS.—In an action for damages because of the refusal of a carrier to deliver freight without payment of an excessive charge, where a correct judgment was rendered, the cause will not be reversed because of the giving of an improper instruction on the issue of rates.

3. CARRIERS—DELAY—RESHIPMENT CHARGES.—Where a carrier refuses to deliver certain freight until the appellee paid certain excessive charges, it will be liable for the cost of reshipping the goods to another market, the market at the first place of destination having been lost by the delay.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; affirmed.

### STATEMENT BY THE COURT.

R. E. Allen brought this suit against the railway company for damages for loss sustained on a shipment of a car load of hay from Braggs Oklahoma, to Benton, Arkansas, which the consignee refused to receive because of an overcharge of freight demanded by the company of $24.02, on account of which, while the charge was being adjusted, several days elapsed for which demurrage charges were made and paid, and the hay had to be reshipped to Malvern, Arkansas, at an additional expense of $10.80, before it was finally disposed of at a loss altogether of $34.84 on the car.

The action was also for $9.45 damages to a car load of hulls that got wet in transit from Little Rock to Malvern, and $2.88 on a car load of bran shipped from Illinois to Malvern for which liability is now conceded.

Judgment was rendered by default in the justice's court's and the case appealed to the circuit court.

The defendant answered there and denied there was any overcharge upon the car load of hay shipped to Benton, that same was not accepted by the consignee because of the overcharge of freight and alleged that the consignee refused to accept it because of the inferior quality of the hay; admitted that the car was reshipped from Malvern to Benton; denied that the correct freight charge was $10.80, and alleged that it should have been $35.20. Claimed also for demurrage on the car at Ben-

ton $6; denied that the plaintiff was damaged in any sum and alleged he was due the defendant a balance of $6.27 for freight on the shipment of the car of hay; denied liability for the damages on the second and third claims.

It appears from the testimony that R. E. Allen, the plaintiff, purchased the car of hay at Braggs, Oklahoma, weighing 27,080 pounds, and consigned it to shipper's order, "Notify J. S. Lucas, Malvern, Ark.," and diverted it before arrival to Lokey & Burton at Benton, Ark., where it had been sold.

The railway company demanded freight of Lokey & Burton on the weight of 35,700 pounds, which they refused to pay. After the plaintiff was notified of their refusal, he went to Benton, showed the agent of the railway company his invoice seven or eight days after the arrival of the car at Benton and the agent consented to a reduction of the freight charge to $56.87, the amount due at the interstate rate on 27,080 pounds, the correct weight.

Lokey & Burton, to whom the car had been sold, again refused to accept or receive the shipment, having purchased other hay after the railway company declined to deliver it unless freight was paid on 35,700 pounds.

Plaintiff was unable to dispose of the hay at Benton after the purchasers there declined to receive it and reshipped the car to Malvern, paying the intrastate rate of $10.83 thereon, and was also required to pay $6 demurrage on the car while at Benton.

There was no additional charge for freight in diverting the shipment consigned to Malvern to Benton since both places took the same rate from the Oklahoma point.

The agent of the railway company stated that Allen paid under protest on the shipment $91.81 freight charges including $34.93 overcharge and $10.83 was charged for carrying the car from Benton to Malvern, which was the correct rate on an intrastate shipment, that the interstate rate was higher and would amount to $35.20; that Allen would still be due the railway company $24.37, if

required to pay freight on the shipment from Benton to Malvern at the interstate rate.

The car remained at Benton nine days, and there was $6 demurrage charge collected and the agent there testified that the car should have taken the interstate rate on reshipment from Benton to Malvern, and plaintiff been required to pay $35.20 instead of $10.83 freight, making the whole charge for freight $98.07, when in fact Allen only paid $91.80, which would leave a balance due the railway company $6.27 in excess of the amount it owed him.

Lokey testified that the car of hay arrived at Benton; that the bank notified him that the bill of lading had arrived and he ascertained what the freight charges were and told the agent it was too much. He then called Mr. Allen at Malvern, informed him and was told that there was an evident mistake and to see the agent and have it corrected. The agent said he was required to charge for the weight as shown on the freight bill or waybill and declined to reduce the charge; within six or eight days afterward the agent called him up and told him the charge had been corrected. He had bought other hay in the meantime, but went to look at the hay and declined to buy it, saying it was not as good grade as he desired.

Plaintiff testified in rebuttal that Lokey & Burton made no complaint to him about the grade of the hay and that he was unable to dispose of it at Benton after the freight charges were reduced.

The court instructed the jury, and from the judgment on the verdict against it the railroad company appealed.

*E. B. Kinsworthy, W. R. Donham* and *T. D. Crawford,* for appellant.

*D. D. Glover,* for appellee.

KIRBY, J., (after stating the facts). It is contended that the court erred in not directing a verdict for appellant on the first cause of action, the shipment on which the overcharge of freight was claimed, and damages,

never having lost its interstate character, and that the court erred in its instructions to the jury relative to the proper rate to be charged for the transportation of the car from Benton to Malvern after the refusal of the purchasers there to receive it.

There was no question made that the shipper did not have the right to divert the car of hay to Benton, Arkansas, notwithstanding it was consigned to Malvern, nor that Benton was not the place of delivery for the shipment.

The jury were also warranted in finding that the dealers at Benton who had purchased the hay from Allen and were to be notified of the arrival of the shipment, refused to accept the consignment because of the overcharge of freight demanded by the railroad on account of incorrect weight.

(1) The charge for demurrage was incurred on account of the delay occasioned by the railroad company in refusing to deliver the shipment without the payment of the excessive charge and the time consumed in the correction and adjustment of it, and we see no reason why the appellee should not have recovered said amount.

(2-3) The shipment from Oklahoma had reached its final destination at Benton, to which place it was rightfully diverted and where it could not be delivered because of the fault of the railway company in demanding an excessive amount of freight, and the plaintiff was then compelled to reship the hay to Malvern for a market and had the right to recover as damages the amount paid as freight charges therefor. There is no question in this case of an attempted evasion of the payment of interstate rates, as in *Porter* v. *St. Louis S. W. Ry. Co.,* 78 Ark. 182. It can make no difference that the court instructed the jury that if the railway company was the cause of the hay not being delivered at Benton and afterward accepted the car for shipment to Malvern on an intrastate rate, which it collected, that it would be estopped to claim a higher rate and defeat the action, and also that the shipment in question was an interstate one and that

the railway company had the right to apply and charge the interstate rates and at no time was it deprived of the interstate character and at no time were the State rates applicable. Without regard to said instructions given, the right result has been reached and the correct judgment rendered.

The railway company wrongfully caused the delay at Benton, according to the finding of the jury, and could not retain the amount charged for demurrage for such delay and the plaintiff had the right to reship the car of hay, which could not be sold at Benton because of its negligence, to a market where it could be disposed of with as little loss as possible, and the company was liable for the overcharge of freight collected and the damages, which in this case amounted only to the demurrage charge and the freight charges paid from Benton to Malvern, regardless of which rate was applied.

There is no prejudicial error in the record, and the judgment is affirmed.